IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00170-PAB-KLM

ORALABS, INC., a Colorado Corporation,

    Plaintiff,

v.

THE KIND GROUP LLC, a New York Limited Liability Company,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Joint Claim Construction Statement Regarding U.S. Design Patent No. D644,939 [Docket No. 55] filed by defendant The Kind Group, LLC ("Kind Group") and plaintiff OraLabs, Inc. ("OraLabs"); Plaintiff OraLabs, Inc.'s Responsive Claim Construction Brief [Docket No. 60]; and Kind Group's Reply Claim Construction Brief [Docket No. 62].

**I. BACKGROUND**

Kind Group owns United States Patent No. D644,939 (the "'939 Patent"), which covers the "ornamental design for the spherically-shaped lip balm." Docket No. 1-2 at 1-5. OraLabs filed this case on January 24, 2013, seeking a declaration that its product Chap-Ice Lip Revolution ("Revo") does not infringe the '939 Patent and a declaration that the '939 Patent is invalid. Docket No. 1 at 3-4. A claim construction hearing is currently set for Friday, May 30, 2014. Docket No. 58.

In the Joint Claim Construction Statement, Kind Group contends that the Court

"should not attempt to construe the patented design because a detailed verbal description is not necessary or helpful to the jury," which will be able to "easily understand the drawings of the '939 patent and compare those drawings to the accused products."  Docket No. 55 at 3.  Kind Group requests that the Court enter an order construing the patent "simply as shown in the figures contained therein, with no verbal construction."  Docket No. 59 at 15.

OraLabs contends that claim construction is required to determine infringement and the validity of the '939 Patent.  Docket No. 55 at 8.  OraLabs argues that its proposed verbal construction (1) is necessary to resolve an ambiguity in the drawings (namely, why the "side view" in Figure 5 is missing the thumb divot included in the other drawings), Docket No. 60 at 7-8; (2) is necessary to identify the key details that distinguish the '939 Patent from the prior art, Docket No. 60 at 9-11; (3) is helpful and accurate, for example, because it clarifies that elements within dotted lines are not part of the claimed design.  Docket No. 60 at 11-13.

Kind Group maintains that OraLabs' proposed construction "improperly focuses on individual design features" and is needlessly confusing.  Docket No. 55 at 6.  It further argues that the Court should not address obviousness and functionality at this time.  *Id*. at 7.

## II.  ANALYSIS

In deciding how to construe the '939 Patent, the Court must consider OraLabs' arguments that a verbal construction is necessary to resolve ambiguities in the drawings, to distinguish the claimed design from prior art, and to facilitate a ruling on patent invalidity.  The Court need not, however, evaluate the accuracy or utility of the

particular construction that OraLabs proposes–such a discussion would properly follow a threshold determination that a verbal claim construction is required in the first place.

### A. Legal Framework–Construing Design Patents

"'[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)). *Egyptian Goddess* held that courts should apply the "ordinary observer" test, as defined above, to design patent infringement claims. *Id*. at 678. In addition, *Egyptian Goddess* addressed the question of when a court should verbally construe a design patent:

> As the Supreme Court has recognized, a design is better represented by an illustration "than it could be by any description and a description would probably not be intelligible without the illustration." *Dobson v. Dornan*, 118 U.S. 10, 14, 6 S. Ct. 946, 30 L. Ed. 63 (1886). The Patent and Trademark Office has made the same observation. Manual of Patent Examining Procedure § 1503.01 (8th ed. 2006) ("[A]s a rule the illustration in the drawing views is its own best description."). Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to "construe" a design patent claim by providing a detailed verbal description of the claimed design.

*Id*. at 679; *see also In re Freeman*, 23 App. D.C. 226, at *2 (D.C. Cir. 1904) ("Undoubtedly, in the matter of application for a patent for a design, a picture of the design serves to convey a greatly more adequate idea of the design than any verbal description could possibly do; and, in the presence of the picture, a superadded verbal description is generally useless and oftentimes confusing.").

The court in *Egyptian Goddess* noted that the decision to issue a detailed claim construction falls within the discretion of the district court, but cautioned against wasting time on unnecessary constructions. 543 F.3d at 680 ("In this case . . . . it is not clear that the considerable effort needed to fashion the verbal description contributed enough to the process of analyzing the case to justify the effort."). The court also cautioned against the more serious risk "entailed in such a description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." *Id.*; *see Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ("This case shows the dangers of reliance on a detailed verbal claim construction. The claim construction focused on particular features of the '789 patent design and led the administrative judge and the Commission away from consideration of the design as a whole. This error is apparent in the Commission's explicit reference to two details required by the written claim construction but not by the '789 drawings . . . . This error distorts the infringement analysis by the ordinary observer viewing the design as a whole.").

*Egyptian Goddess* also identified a handful of interpretive tasks–apart from issuing a comprehensive verbal claim construction–that might aid the finder of fact: (1) pointing out "various features of the claimed design as they relate to the accused design and the prior art"; (2) explaining "the role of particular conventions in design patent drafting, such as the role of broken lines"; (3) "assessing and describing the effect of any representations that may have been made in the course of the prosecution history"; and (4) "distinguishing between those features of the claimed design that are

ornamental and those that are purely functional." 543 F.3d at 680. The court concluded by leaving "the question of verbal characterization of the claimed designs to the discretion of trial judges, with the proviso that as a general matter, those courts should not treat the process of claim construction as requiring a detailed verbal description of the claimed design, as would typically be true in the case of utility patents." *Id*.; *see also Wing Shing Prods. (BVI) Co. Ltd. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 360 (S.D.N.Y. 2009) ("District courts following *Egyptian Goddess* have generally relied on patent drawings to construe design claims.") (listing cases); *see also Yao-Hung Huang v. Marklyn Grp. Inc.*, No. 11-cv-01765-REB-BNB, 2012 WL 4856720, at *2 (D. Colo. Oct. 11, 2012) (applying *Egyptian Goddess* in the context of a design patent infringement claim).

### B. Ambiguities in the Drawings

OraLabs' first argument is that a claim construction is required to resolve an ambiguity in the drawings. Docket No. 60 at 7-8. OraLabs contends that Figure 5, a side elevation view of the claimed design, is inaccurate because it "does not show the flat portion on the front surface of the bottom container portion that is unmistakably a part of Figures 2 and 3." *Id*. at 7.

In support of this argument, OraLabs cites the patent examiner's finding that the drawings, as initially submitted, were inconsistent because Figure 2 (a top view) did not indicate the divot visible in Figure 1 (a side view). *Id*. at 8; *see also* 61-3 at 6. This evidence does not support OraLabs' argument since the patent examiner did not find that Figure 5 was likewise inconsistent. Rather, as Kind Group persuasively argues in

its reply brief, a "'side elevation' could be from any perspective, including angles from which the feature that OraLabs refers to as the 'flat portion' is not visible." Docket No. 62 at 2.

OraLabs incorrectly states that the court in *HR U.S. LLC v. Mizco Int'l, Inc.*, 2009 WL 890550 (E.D.N.Y. Mar. 31, 2009), issued a verbal claim construction to "clarify inconsistencies in drawings." Docket No. 60 at 6. In fact, the court in *Mizco* found that a "detailed verbal description" was "unnecessary" and that it was more appropriate to "rely upon the illustrations set out in [the patent], as they better represent the claimed design." 2009 WL 890550, at *9 (citation omitted). Instead of issuing a comprehensive verbal construction, the court simply noted "various inconsistencies" in the patent drawings that "warrant[ed] a brief description." *Id*. ("Those inconsistencies should be construed as follows: (1) the side arms overlap the base as shown in Figures 2, 3 and 4; (2) the top of the base is curved as shown in Figures 4 and 5; (3) the side arms are located towards the bottom of the base as shown in Figures 1, 4 and 6; and (4) the side arms have a trapezoidal shape as shown in Figure 6."). Should the Court find that the drawings in this case are inconsistent in the manner that OraLabs alleges, the Court could instruct the finder of fact on this point without issuing a verbal claim construction.

### C. Prior Art

Next, OraLabs argues that, because the prior art contains so many designs involving a "spherical interior applicator or spherical or egg shaped case," "small differences between the '939 Patent, the accused OraLabs REVO product and the prior art will be significant in determining the proper scope of the asserted design." Docket

No. 60 at 9, 11.

OraLabs cites *Egyptian Goddess* for the proposition that, "when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." Docket No. 60 at 6 (citing 543 F.3d at 678). This statement, however, was made in the context of determining which test to apply and is apparently irrelevant to the question of whether a verbal claim construction is required. Notably, the court did not find that a verbal claim construction would be required to distinguish a claimed design from the prior art. *See* 543 F.3d at 680 ("there would be nothing wrong with the court pointing out to a jury that in the patented design only three sides have buffers attached, while in the accused product (and in the three-sided Nailco patent), all of the sides have buffers attached. It would similarly be permissible for the court to point out that, for example, although the Falley Buffer Block has four sides, it is not hollow, unlike the design of the '389 patent, the Nailco patent, and the accused Swisa product.").

Moreover, the court in *Egyptian Goddess* discussed at length the need to consider prior art in assessing the similarity between two designs and did not conclude that a verbal claim construction becomes more important as the field of prior art becomes more crowded. *Id*. at 677 ("If the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing. At the same time, unlike the point of novelty test, the ordinary observer test does not present the risk of assigning exaggerated importance to small differences between the claimed and accused designs relating to an insignificant

feature simply because that feature can be characterized as a point of novelty.").

In fact, by implying that its proposed claim construction is meant to focus attention on specific features of the design, OraLabs seems to run the risk highlighted in *Egyptian Goddess* of "placing undue emphasis on particular features of the design," causing the finder of fact to "focus on each individual described feature in the verbal description rather than on the design as a whole." 543 F.3d at 680.

### D. Invalidity

OraLabs' final argument is that "[p]roper claim construction is also needed to determine the validity of a patent, such as whether the patent is invalid due to the functionality of the claimed design or whether the claimed design is obvious." Docket No. 55 at 8. Kind Group responds that "OraLabs conflates claim construction, *i.e.*, determining what guidance, if any, is needed to assist the *jury* in the infringement analysis, with a court's obligation to articulate its reasoning to an *appellate court* to support a legal ruling of invalidity." Docket No. 59 at 14.

The test for invalidity differs from the test for infringement:[1]

---

[1] OraLabs recognizes that these two tests are distinct, but argues that the "Federal Circuit applies the same principles to claim construction for infringement purposes as invalidity." Docket No. 60 at 15-16. In support of this contention, OraLabs cites *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376-77 (Fed. Cir. 2002), *abrogated in part by Egyptian Goddess*, 543 F. 3d at 88, as an example of a case that applies the "obviousness considerations set forth in [*Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104-05 (Fed. Cir. 1996)] as part of claim construction for its infringement analysis." Docket No. 60 at 15-16. OraLabs misrepresents the import of the citation to *Durling* in *Contessa*. *Contessa* cites *Durling* once for the proposition that, "[i]n construing a design patent claim, the scope of the claimed design encompasses 'its visual appearance as a whole,' and in particular 'the visual impression it creates.'" *Contessa*, 282 F.3d at 1376 (quoting *Durling*, 101 F.3d at 104-05). This is a fundamental principle of design patent construction. The fact that courts apply this principle in the context of different types of design patent claims does not give rise to an

> When assessing the potential obviousness of a design patent, a finder of fact employs two distinct steps: first, "one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design"; second, "[o]nce this primary reference is found, other references may be used to modify it to create a design that has the same overall visual appearance as the claimed design."

*High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1311 (Fed. Cir. 2013) (quoting *Durling*, 101 F.3d at 103); *see also Egyptian Goddess*, 543 F.3d at 679 n.1 ("This court has required that in determining obviousness, a district court must attempt to 'translate [the] visual descriptions into words' in order to communicate the reasoning behind the court's decision and to enable 'the parties and appellate courts . . . to discern the internal reasoning employed by the trial court.' *Durling*, 101 F.3d at 102. Requiring such an explanation of a legal ruling as to invalidity is quite different from requiring an elaborate verbal claim construction to guide the finder of fact in conducting the infringement inquiry.").

The first step in the invalidity analysis can be broken down into two component steps: "(1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a single reference that creates 'basically the same' visual impression." *Durling*, 101 F.3d at 103. A court may arrive at these determinations intuitively, but it is imperative that the court "communicate the reasoning behind the decision" by "translat[ing] these visual descriptions into words" that "evoke the visual image of the design." *Id*. Although some courts refer to this translation process as "claim construction," it is not in itself a legal conclusion, "but merely an

---

inference that a verbal claim construction is a necessary prerequisite to resolving an invalidity claim.

essential step in assessing whether the issues of infringement and invalidity may be resolved as a matter of law or whether they present fact issues for the jury." *Ashley Furniture Indus. Inc. v. Lifestyle Enters. Inc.*, 574 F. Supp. 2d 920, 927 (W.D. Wis. 2008) ("This type of design patent interpretation is not for the enlightenment of the jury, but for the benefit of a reviewing court.").

OraLabs argues that a verbal claim construction is required in order for the Court to conduct an invalidity analysis. Docket No. 55 at 10. This is incorrect. The Court does not need to issue a detailed verbal claim construction as a tool to aid the finder of fact in deciding the infringement claim in order to consider the invalidity of the patent. *See Egyptian Goddess*, 543 F.3d at 679 n.1. Rather, at the time the invalidity claim is properly before the Court, the Court can write a description evoking the visual impression of the claimed design and the accused product as a step in its invalidity analysis. Moreover, if OraLabs' argument were correct, then a verbal claim construction would be required in *every* instance where a party challenges the validity of a patent–a result that would contravene the holding in *Egyptian Goddess*. *See* 543 F.3d at 680 ("as a general matter, [] courts should not treat the process of claim construction as requiring a detailed verbal description of the claimed design, as would typically be true in the case of utility patents").

OraLabs argues that its request that the Court begin laying the groundwork for its invalidity analysis is not premature because initial expert witness reports are due on May 30, 2014. Docket No. 60 at 16. As Kind Group points out, Docket No. 62 at 10, the claim construction hearing is also set for May 30, 2014; unless OraLabs expects the Court to issue a claim construction before the hearing, this argument is unavailing.

**III. CONCLUSION**

Since the pictures of the claimed design are clear and straightforward, and since OraLabs has not provided a valid reason for issuing a verbal claim construction, the Court declines to issue a detailed verbal claim construction. At the claim construction hearing, the parties shall address whether and how the Court should instruct the jury on the following issues:

(1) "various features of the claimed design as they relate to the accused design and the prior art";

(2) patent drafting conventions;

(3) prosecution history;

(4) distinguishing between ornamental and functional features of the claimed design; and

(5) any other matters necessary to provide "an appropriate measure of guidance to a jury without crossing the line and unduly invading the jury's fact-finding process."

*See Egyptian Goddess*, 543 F.3d at 680. Wherefore, it is

**ORDERED** that the parties shall file briefs of no more than ten pages addressing the issues listed above **on or before Monday, May 19, 2014**. It is further

**ORDERED** that, due to the likelihood of a criminal trial extending into the afternoon of May 30, 2014, the parties are directed to jointly call chambers via conference call (303-335-2794) to reset the May 30, 2014 hearing.

DATED April 24, 2014.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge