IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-00170-PAB-KLM

ORALABS, INC., a Colorado Corporation,

      Plaintiff/Counterclaim Defendant,

v.

THE KIND GROUP LLC, a New York Limited Liability Company,
EOS PRODUCTS LLC, a New York Limited Liability Company,

      Defendants/Counterclaim Plaintiffs.

---

## PLAINTIFF/COUNTERCLAIM DEFENDANT ORALABS, INC.'S MOTION FOR SUMMARY JUDGMENT

---

**I.**      **INTRODUCTION**

      Plaintiff/Counterclaim Defendant OraLabs, Inc. ("OraLabs") moves for summary judgment on all of The Kind Group LLC's and EOS Products LLC's (collectively, "Kind Group") Second Amended Counterclaims [Doc. No. 129].  Kind Group's Claims II-VI allege that OraLabs' Lip Revo lip balm product infringes Kind Group's trade dress rights in its EOS SMOOTH SPHERE™ lip balm product.  Kind Group's Claim I alleges that the OraLabs Lip Revo lip balm infringes U.S. Design Patent No. D644,939.  Kind Group lacks evidence on an essential element of each of the counterclaims.  Specifically, there is no genuine issue of material fact with respect to (i) likelihood of confusion necessary to prove Kind Group's Claims II-VI; and (ii) similarity of the designs necessary to prove Kind Group's Claim I.  OraLabs is entitled to judgment in its favor with respect to each of these counterclaims.  Fed. R. Civ. P. 56(a).

## II.   ORALABS' STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")

### A.   Kind Group's Trade Dress

1.     Since 2009, Kind Group has offered a line of lip balm products, known as the eos SMOOTH SPHERE™ lip balm.  (Second Amended Counterclaims [Doc. No. 129], p. 4, ¶ 12.)

2.     The eos SMOOTH SPHERE™ lip balm is offered for sale in secondary packaging of either a blister card or individually shrink wrapped and placed in a shelf caddy, as shown below:




(Declaration of Patricia Y. Ho ("Ho Dec."), ¶¶ 3, 8, Ex. 1, 35:10-25.)

3.     The secondary packaging for the eos SMOOTH SPHERE™ lip balm displays the "eos" and "evolution of smooth" marks.  (SUMF, ¶ 2.)

4.     The "eos" mark is imprinted on the top and bottom of the eos SMOOTH SPHERE™ lip balm product:



.  (Ho Dec., ¶ 3; *see also* SUMF, ¶ 2.)

5.      Kind Group alleges that it owns common law trade dress rights in the primary packaging for the eos SMOOTH SPHERE™ lip balm, which has a base, a "lid" or top portion that is threaded onto the base portion, and a depression in the side wall of the packaging, as depicted below:



(Second Amended Counterclaims [Doc. No. 129], pp. 4-5, ¶¶ 13-14; Ho Dec., ¶ 6) (hereafter referred to as "the eos Trade Dress").)

6.      Kind Group owns U.S. Trademark Registration No. 3,788,970, which is on the Supplemental Register, for the eos Trade Dress.  (Ho Dec., ¶ 9, Ex. 2.)

7.      Kind Group does not own a U.S. federal registration on the Principal Register for the eos Trade Dress.

8.      Kind Group's target consumers are females, ages 13-38. (BRI000001-5, BRI000021 (Ho Dec., ¶¶ 10-11, Exs. 3, 4; 79:22-82:3, 114:25-116:2).)

**B.      OraLabs' Lip Revo Product**

9.      Sometime in 2011, customers of OraLabs requested that OraLabs manufacture a product similar to the eos SMOOTH SPHERE™ lip balm.  (Ho Dec., ¶¶ 12-13, Exs. 5, 6, Response to Interrogatory No. 2, 116:21-118:17, 120:4-12.)

10.      OraLabs subsequently developed the Chap-Ice® Lip Revolution lip balm product ("Lip Revo"). (*Id*.)

11.      OraLabs engaged counsel, John Welsh, to search for any intellectual property rights associated with the eos SMOOTH SPHERE™ lip balm, and as a result, Mr. Welsh became aware of the '939 Patent.  (Ho Dec., ¶ 13, Ex. 6, 120:21-121:2, 122:19-123:11, 125:12-22.)

12.      In connection with the advice of counsel of John Welsh, OraLabs' Lip Revo does not have a depression in the side wall of its primary packaging:



(Ho Dec., ¶¶ 7, 13, Ex. 6, 122:19-123:11, 158:19-160:23,169:10-171:12.)

13.      In connection with the advice of counsel, OraLabs' Lip Revo's lip balm portion has a flattened top.



(*Id.*)

14.    OraLabs' Lip Revo additionally has 3 raised s-curve lines protruding from the side wall of the Lip Revo.  (*Id.*, ¶ 13, Ex. 6, 177:11-17, 177:25-178:4.)

15.    The trademark, "revo", is also molded into the bottom of the Lip Revo product.



(*Id.*, 194:1-12.)

16.    Since July 8, 2013, OraLabs has manufactured the Lip Revo for various retailers in the United States under the retailer's private-label, or "house mark".  (Ho Dec., ¶¶ 13-15, Exs. 5, 6, 261:8-263:12, 125:17-22.)

17.    As sold in commerce, the Lip Revo is in secondary packaging of either a blister card or individually in a fishbowl, with the house mark for each particular retailer affixed to the blister card or the fishbowl, as shown below:



(Ho Dec., ¶¶ 4, 16-17, Exs. 9-10, ¶ 13, Ex. 6, 209:4-9; 294:17-295:6, ¶ 14, Ex. 7.)

   18. In addition to the "revo" trademark imprinted on the bottom of the product, the

Lip Revo also contains a label affixed to the top bearing the house mark of the particular retailer:




(Ho Dec., ¶ 4.)

   19. OraLabs' potential customers for the Lip Revo are males and females of any age.

(Ho Dec., ¶ 18, Ex. 11, Response to Interrogatory No. 10.)

   **C.** **Likelihood of Confusion Surveys**

6

20.     Kind Group retained Dr. Bruce Isaacson to conduct a survey to measure the level of confusion, if any, of OraLabs' potential customers.  (Ho Dec., ¶ 11, Ex. 4, 6:13-7:18, 11:4-9.)

21.     Dr. Isaacson surveyed respondents in Kind Group's target consumers, not OraLabs' potential customers.  (*Id.*, 79:22-82:3, 113:25-116:2.)

22.     OraLabs retained Mr. Philip Johnson to conduct a rebuttal survey to measure the level of confusion, if any, OraLabs' potential customers.  (Ho Dec., ¶ 19, Ex. 12, ¶¶ 8, 14.)

23.     Mr. Johnson surveyed respondents that were males and females, ages 13 and up, based upon OraLabs' potential customers.  (*Id.*, ¶¶ 15-16.)

24.     Mediamark Research and Intelligence ("MRI") Adult Market Data and Teen Market Data for the lip balm category indicate both males and females purchase lip balm.  (Ho Dec., ¶ 20, Ex. 13, ¶ 21, Ex. 14.)

25.     Mr. Johnson's survey reflected a net level of 5.8% confusion of OraLabs' potential customers.  (Ho Dec., ¶ 19, Ex. 12, ¶ 45.)

### D.     Third Party Products

26.     Twist n' Pout and the Sephora Kiss Me Softly Lip Balm are currently available products.  (Ho Dec., ¶¶ 22-23, Exs. 15-16.)

### E.     The '939 Patent

27.     The Kind Group LLC is the assignee of all right, title and interest in and to U.S. Design Patent No. 644,939 ("the '939 Patent"), which was filed December 3, 2009 and issued September 13, 2011.  (Second Amended Counterclaims [Doc. No. 129], Ex. 1.)

28.     U.S. Design Patent No. D554,529 to Green et al. ("Green"), U.S. Design Patent No. D266,146 to Morris ("Morris"), and U.S. Patent No. 4,765,501 to Kao ("Kao") are prior art references to the '939 Patent:



(Ho Dec., ¶¶ 24-26, Exs. 17-19; Second Amended Counterclaims [Doc. No. 129], Ex. 1, "References Cited", pp. 1-2.)

## III.     ARGUMENT

### A.     Kind Group's Trade Dress Claim Fails Because There Is No Likelihood of Confusion

Kind Group asserts infringement of its purported common law trade dress rights in the eos Trade Dress.  Although Kind Group owns U.S. Federal Registration No. 3,788,970 for the primary packaging of the eos SMOOTH SPHERE™ lip balm, the registration is on the Supplemental Register and does not provide any rights beyond those under common law.  3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19:36 (4th ed. 2014).  Accordingly, at trial, Kind Group must prove: 1) the eos Trade Dress is a valid and protectable mark; 2) that OraLabs used the eos Trade Dress in commerce without Kind Group's consent; and 3) that there is a likelihood of confusion between the eos Trade Dress and the OraLabs Lip Revo product.  *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008).  OraLabs' Motion focuses on Kind Group's lack

of evidence sufficient to prove the last essential element of these claims -- likelihood of confusion.

Courts look to the following non-exhaustive factors to determine likelihood of confusion: 1) the degree of similarity between the marks; 2) the intent of the alleged infringer in adopting its mark; 3) evidence of actual confusion; 4) similarity of products and manner of marketing; 5) the degree of care likely to be exercised by purchasers; and 6) the strength or weakness of the marks. *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999). The determination requires more than counting the number of factors in favor of each side. It requires a court to take into account the proper weight that each factor should be assigned. *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649-50 (11th Cir. 2007); *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 558 (10th Cir. 1998). In this regard, the similarity of the marks and evidence of actual confusion is given great weight. *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 973 (10th Cir. 2002); *King of the Mountain Sports*, 185 F.3d at 1091; *Hi-Tech Pharms., Inc. v. Herbal Health Prods., Inc.*, No. 04-11605, 2005 U.S. App. LEXIS 9791, at *4 (11th Cir. May 26, 2005) (unpublished). As discussed below, OraLabs believes that five of the six factors, including similarity of the marks and evidence of actual confusion, weigh in favor of OraLabs and against a finding of likelihood of confusion.

### (i)     Similarity of Marks, Products, and Manner of Marketing

Factors 1) and 4) have been combined, since there is no dispute that the products are both lip balm, with the same type of secondary packaging, and sold to some of the same retailers, although the Lip Revo also is sold in convenience and dollar stores as well. (SUMF, ¶¶ 2, 16-17.) *See Heartsprings*, 143 F.3d at 556-57. In weighing the similarity of the marks, the context

of the marks as a whole must be evaluated as they are encountered in the marketplace, which includes lettering styles, logos and coloring schemes.  *King of the Mountain Sports*, 185 F.3d at 1090; *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1002 (10th Cir. 2014).  Moreover, in considering how the marks are encountered in the marketplace, "conflicting marks must be compared in their entirety, including any 'house mark' which one party may append to its mark." 4 McCarthy § 23:43 at 23-217 to 218; *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1157 (10th Cir. 2013).  For instance, in *Water Pik*, the alleged infringing word mark, "SinuSense", was branded on sinus irrigation products, but also featured the house mark of "waterpik" in large print on the packaging for the products.  726 F.3d at 1141-42, 1157.  Since the "SinuSense" mark did not appear in isolation when used in commerce, the presence of this house mark weighed heavily in the finding that the differences between the marks greatly outweighed any similarities.  *Id.* at 1157.

Here, the eos Trade Dress as embodied in the eos SMOOTH SPHERE™ lip balm and the Lip Revo also do not appear in isolation when sold in the marketplace.  (SUMF, ¶¶ 2, 17.)  It is undisputed that both the eos SMOOTH SPHERE™ lip balm and Lip Revo are sold in secondary packaging comprising a blister card or shrink wrap.  (*Id.*)  The blister card and the shrink wrap for the eos SMOOTH SPHERE™ lip balm both bear the house mark of "eos" and the tag line "evolution of smooth" prominently in bold lettering.  (*Id.*, ¶ 2.)  For example, on the blister card for the eos SMOOTH SPHERE™ lip balm, the house mark "eos" is in larger lettering than the words "lip balm".  (*Id.*)  For the Lip Revo, the house mark and logo of the corresponding retailer is displayed prominently at the top of the blister card of the Lip Revo, *i.e.* "Rite Aid" or "Well at Walgreens".  (*Id.*, ¶ 17.)  Furthermore, the words "lip balm" are in bold lettering and placed in

the middle of the blister card. (*Id.*) The house mark and logo of the corresponding retailer are also displayed prominently on the label for the fish bowls. (*Id.*) There is no dispute that the respective marks used on the secondary packaging are quite dissimilar.

Even in comparing the respective products themselves, the marks are also dissimilar. The eos SMOOTH SPHERE™ lip balm has a prominent thumb depression, or indentation, on the side wall of the product. (SUMF, ¶ 5.) The Lip Revo does not have the thumb depression in the side of the container as claimed in the eos Trade Dress. (*Id., ¶¶* 5, 12.) The Lip Revo generally has a uniform surface without any depression. (*Id.*) Instead, there are 3 protruding s-curves shown on the front of the product. (*Id.*, ¶¶ 12, 14.) Additionally, the Lip Revo has "revo" molded into the bottom and a sticker label on the top of the product bearing the house mark of the retailer, i.e. "Rite Aid" or Well at Walgreens". (*Id.*, ¶¶ 15, 18.) In contrast, the eos SMOOTH SPHERE™ lip balm has its house mark "eos" stamped on the bottom and the top of the product. (*Id.*, ¶¶ 2, 4.) In summary, the substantive differences between the products and the secondary packaging, which bear each party's respective house marks, provide more than enough distinction between the eos Trade Dress and the Lip Revo to prevent any likelihood of confusion. These factors weigh in favor of OraLabs.

<center>(ii)    **Intent of the alleged infringer**</center>

The central concern in this factor is whether the alleged infringer intended to deceive or confuse, not intent to copy. *Water Pik*, 726 F.3d at 1157 (citing *Utah Lighthouse Ministry*, 527 F.3d at 1055; *Sally Beauty*, 304 F.3d at 973; *see also Overstock.com, Inc. v. Nomorerack.com, Inc.*, No. 13-cv-1095, 2014 U.S. Dist. LEXIS 89620, at *10 (D. Utah Jun. 30, 2014)). Indeed, trademark law does not prohibit *copying* as such; that is the province of copyrights and patents.

<center>11</center>

*Groneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 511 (6th Cir. 2013). In contrast, trademark law's likelihood of confusion requirement is designed to promote informational integrity in the marketplace to ensure that consumers are not confused about what they are buying. *Id.* at 513. This incentivizes manufacturers to create robust brand recognition by consistently offering goods products and services, and consumers can choose between multiple competitive options. *Id.* at 513-14. Thus, the chief concern of trademark law is not about copying per se, but about copying that results in consumer confusion. *Id.* at 514.

Applied in a trade dress context, copying of a product's design would be infringing if the OraLabs passed off the Lip Revo as an "eos" product, confusing consumers about the source of the product they were buying. *See Water Pik*, 726 F.3d at 1157 n.7. For instance in *Groneveld*, the plaintiff Groneveld asserted trade dress rights in its automotive grease pump. 730 F.3d at 500. Although the defendant made a "virtually identical" copy of Groneveld's product, the Sixth Circuit found that the differential labeling of the products, with the defendant's logo and house mark being starkly different and prominently displayed, established that consumers would not be confused. *Id.* at 515. The court even went onto state that differential labeling would transform defendant's practice into a procompetitive practice for consumers. *Id.* This is even more so the case here, as the Lip Revo is not an identical copy and Kind Group has not presented any evidence reflecting that OraLabs intended to deceive consumers.

In fact, evidence to the contrary exists. Gary Schlatter, the owner of OraLabs, testified that after OraLabs was approached by customers to manufacture a product similar to the eos SMOOTH SPHERE™ lip balm, OraLabs purposefully designed the Lip Revo to be sufficiently different to avoid likelihood of confusion with the eos SMOOTH SPHERE™ lip balm. (SUMF,

¶¶ 9-15.) Indeed, OraLabs engaged counsel John Welsh and used his counsel in designing the Lip Revo to avoid Kind Group's intellectual property rights. (*Id.*, ¶¶ 11-15.) As a result, the Lip Revo's flattened lip balm shape, the 3 s-curves on the outside of the Lip Revo, the "revo" stamp on the bottom of the product, and the prominent display of the retailer's house marks on both the sticker label on top of the Lip Revo and the secondary packaging differentiate the accused Lip Revo from the eos product. (*Id.*, ¶¶ 12-15, 17-18.) In sum, all of the evidence shows the exact opposite of intent to deceive. OraLabs' conduct instead shows active and effective efforts to ensure that consumers would not be confused. Thus, this factor weighs in favor of OraLabs and against a likelihood of confusion.

### (iii)   Evidence of Actual Confusion

Kind Group does not have any evidence of actual instances of consumer confusion. Instead, during the expert phase of this matter, Kind Group proffered a survey conducted by Dr. Bruce Isaacson to establish a likelihood of confusion. (SUMF, ¶ 20.) OraLabs proffered a rebuttal survey conducted by Mr. Philip Johnson. (*Id.*, ¶ 22.) In conducting the rebuttal survey, Mr. Johnson replicated the survey design of Dr. Isaacson, but corrected for significant defects in Dr. Isaacson's survey. (Ho Dec., ¶ 18, Ex. 12, pp. 4-5, ¶¶ 12-14, 16.) These defects generally were Dr. Isaacson: 1) using an overly narrow universe of only females, ages 13-38; 2) using the actual Lip Revo product and control stimuli without any secondary point of sale retail packaging; and 3) employing improper questions that did not allow for a "don't know" response or were not balanced or neutral. (*Id.*)

Dr. Isaacson's overly narrow universe renders his survey irrelevant on this basis alone. It is axiomatic that in conducting a likelihood of confusion survey, the proper universe of

respondents is the *junior user's* (alleged infringer's) potential buyers. 6 McCarthy §§ 32:158, 32:161; *Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc.*, 402 F. Supp. 2d 1312, 1334 (D. Kan. 2005); *see also Hutchinson v. Essence Commc'ns, Inc.*, 769 F. Supp. 541, 559-60 (S.D.N.Y. 1991) (where a survey of only potential users of the senior user's product was held improper). Here, Dr. Isaacson testified that he was told by Kind Group that Kind Group's own target demographic is females, ages 13-38, and that is the universe of respondents he surveyed. (SUMF, ¶ 21.) OraLabs' potential customers for the Lip Revo are "males and females of any age," but Dr. Isaacson did not consider this in choosing his universe of respondents. (*Id.*, ¶¶ 19, 21.) OraLabs' universe of potential customers is further supported by Kind Group's own market research on the lip balm category, which Dr. Isaacson also did not consider. (*Id.*, ¶¶ 21, 24.) In short, Kind Group has only presented survey evidence testing confusion for its own target market – the senior user – not OraLabs. Accordingly, Dr. Isaacson's survey results have no probative value and are not indicative of any confusion. Thus, Kind Group has no evidence of any confusion by OraLabs' potential customers and has not met its burden.

Moreover, once the overly narrow universe was modified to reflect OraLabs' universe of potential customers, OraLabs' rebuttal expert, Mr. Philip Johnson, conducted a rebuttal survey which found no confusion. Specifically, Mr. Johnson replicated the design of Dr. Isaacson's survey, but surveyed males and females ages 13 and up, reflecting OraLabs' universe of potential consumers. Mr. Johnson proceeded further by modifying Dr. Isaacson's survey to address the other major flaws Mr. Johnson found. (Ho Dec., ¶ 18, Ex. 12, pp. 4-5, ¶¶ 15-16.) This included the secondary point of sale packaging for the Lip Revo and the control stimuli, as well as modifying questions to be balanced and neutral, with an additional option for "don't know"

14

responses.  (*Id.*)   As a result, when Dr. Isaacson's survey was conducted with these modifications, Mr. Johnson found a net confusion rate of 5.8% of OraLabs' potential customers, well below the level of actionable confusion.  (Ho Dec., ¶ 18, Ex. 12, pp. 21-23, ¶¶ 46, 50; 6 MCCARTHY § 32:189 (when percentage results are below 10%, evidence that confusion is not likely); *Wuv's Int'l, Inc. v. Love's Enters, Inc.*, No. 78-F-107, 1980 U.S. Dist. LEXIS 16512, at *67-69 (D. Colo. Nov. 8, 1980) (9% results; no likelihood of confusion proven); *see also Henri's Food Prods. Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 358 (7th Cir. 1983) (holding 7.6% confusion weighs against infringement and listing cases where no confusion held based upon results of less than 10%).  Accordingly, because the evidence shows only a 5.8% confusion rate, confusion is unlikely and this factor weighs in favor of OraLabs.

### (iv)   Degree of Care Exercised by Consumers

A consumer exercising a high degree of care at purchase reduces the likelihood of confusion.  *Heartsprings*, 143 F.3d at 557.  Given the significant differences between the Lip Revo and the eos SMOOTH SPHERE™ lip balm as sold in commerce, this factor is neutral.

### (v)   Strength or Weakness of the Mark

The stronger the mark, the more likely confusion may occur.  *See Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1226 (D. Colo. 2001).  The relative strength of a mark is considered through two aspects of strength: 1) conceptual strength: the placement of the mark on the distinctiveness or fanciful-suggestive-descriptive spectrum; and 2) commercial strength: the marketplace recognition value of the mark.  *Id.*  With respect to conceptual strength, since Kind Group only owns a Supplemental Registration for the eos Trade Dress, Kind Group has conceded that the eos Trade Dress is descriptive and is a weak mark.  (SUMF, ¶ 6; 3 MCCARTHY

§ 19:42.)  Under the commercial strength inquiry, extensive use of a mark by third parties undermines its commercial strength.  *Univ. of Kansas v. Sinks*, 565 F. Supp. 2d 1216, 1253 (D. Kan. 2008).  In this case, other ball or spherically shaped lip balms are commercially available, such as the Twist and Pout, and the Sephora Kiss Me Balm.  (SUMF, ¶ 26.)  Thus, in conjunction with the weak conceptual strength of the eos Trade Dress, Kind Group's eos Trade Dress is weak and this factor weighs in favor of OraLabs.

In conclusion, 5 of the 6 factors weigh in OraLabs' favor.  More importantly, however, summary judgment is appropriate for Claim II because the undisputed evidence shows that there is no actual confusion regarding the Lip Revo and that the marks are not similar as sold.  *See Water Pik, Inc. v. Med-Systems, Inc.*, 848 F. Supp. 2d 1262, 1279 (D. Colo. 2012) (lack of similarity of the marks and evidence of actual confusion is given great weight).

### B.  Kind Group's Remaining Common Law Claims Fail

As there is no evidence sufficient to prove Kind Group's claims of trade dress infringement, its remaining Claims III-VI of Colorado common law trade dress infringement, unfair competition, unjust enrichment, and deceptive trade practices under the Colorado Consumer Protection Act must fail as a matter of law as well.

### C.  The Lip Revo Does Not Infringe the '939 Patent

Kind Group has the burden of showing that the ordinary observer, familiar with the prior art, would be deceived into believing that the accused design is the same as the patented design.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008).  Proper application of the ordinary observer test requires comparison of the Lip Revo with the drawings of the '939

Patent.  *Sun Hill Indus. v. Easter Unlimited*, 48 F.3d 1193, 1196 (Fed. Cir. 1995).  When the test

is applied in a pretrial context, the Federal Circuit explained that

> [i]n some instances, the claimed design and the accused design will be sufficiently
> distinct that it will be clear without more that the patentee has not met its burden
> of proving the two designs would appear `substantially the same' to the ordinary
> observer, as required by *Gorham.*  In other instances, when the claimed and
> accused designs are not plainly dissimilar, resolution of the question whether the
> ordinary observer would consider the two designs to be substantially the same
> will benefit from a comparison of the claimed and accused designs with the prior
> art, as in many of the cases discussed above and in the case at bar.

*Egyptian Goddess*, 543 F.3d at 678 (affirming granting of summary judgment on

noninfringement).  Courts have interpreted this language as establishing a two-level infringement

analysis.   The level-one or "threshold" analysis determines whether the accused design is

"plainly dissimilar" to the patented design.  If the accused design is not "plainly dissimilar," only

then is the level-two analysis conducted, which compares the claimed and accused designs with

the prior art.  *Keurig, Inc. v. JBR, Inc.*, No. 11-11941-FDS, 2013 U.S. Dist. LEXIS 73845, at

*13-14 (D. Mass. May 24, 2013) (quoting *Wing Shing Prods. (BVI) Co. v. Sunbeam Prods.*, 665

F. Supp. 2d 357, 362 (S.D.N.Y. 2009)).  Although the level-one inquiry is highly fact dependent,

accused designs have been found "plainly dissimilar" as a matter of law.  *Id.* at *14-17 (*citing*

*Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1003-05 (N.D. Ill. 2010) (where

accused design had scalloped edges and hour-glass shape versus patented smooth edges and

block-rectangle shape plainly dissimilar); *Great Neck Saw Mfrs., Inc. v. Star Asia U.S.A., LLC*,

727 F. Supp. 2d 1038, 1052 (W.D. Wash. 2010) (where allegedly infringing knife did not have

patented element of segmented u-shaped clip, differences in scalloping on handle and shape of

blade holder); *cf. Crocs, Inc. v. ITC*, 598 F.3d 1294, 1304-06 (Fed. Cir. 2010) (where allegedly

infringing shoes appeared "nearly identical"). In conducting the level-one inquiry, the Lip Revo is plainly dissimilar to '939 Patent's design, as shown:

<table>
<tr><th>'939 Patent</th><th>OraLabs Lip Revo</th></tr>
<tr><td>

FIG. 1</td><td>
</td></tr>
<tr><td>

FIG. 2</td><td>
</td></tr>
<tr><td>

FIG. 3</td><td>
</td></tr>
<tr><td>

FIG. 4</td><td>
</td></tr>
</table>





Here, in comparing the overall appearance of the Lip Revo with the '939 Patent's design, the patented design claims a hemispherical lip balm portion, a hemispherical base portion, and a flat portion along the rim of the base portion.  The only similarity with the Lip Revo is the hemispherical base portion.  The Lip Revo does not have the other two features.  The Lip Revo does not have a hemispherical top or a flat portion along the rim of the base.  (SUMF, ¶¶ 12-13.) Instead, its lip balm portion has a flat top and the rim of the base portion is uniformly spherical. (*Id.*)  Moreover, the Lip Revo has an additional difference of 3 extending s-curve ridges.  (*Id.*, ¶ 14.)  Thus, when comparing the overall appearance of the Lip Revo with the '939 Patent, the effect of these differences dominates the overall visual appearance of the respective designs, such that an ordinary observer here would not be deceived that they are one and the same.  The design of the '939 Patent and the Lip Revo are sufficiently distinct that it is clear without more that Kind Group cannot meet its burden of proving that the two designs would "substantially the same" to the ordinary observer.  *Egyptian Goddess*, 543 F.3d at 678.

Even if the Court concludes that the Lip Revo and the '939 Patent's design are not plainly dissimilar, a comparison to the prior art shows that the differences identified above are not insubstantial, and that an ordinary observer would notice these differences.  The Green prior art reference is directed to a design for perfume applicator and claims a spherical applicator portion

and a spherical base portion.  (SUMF, ¶ 28; Ho Dec., ¶ 28, Ex. 17.)  The Morris and Kao prior

art references are directed to a dispensing container and a toy container, which both claim

spherical or hemispherical top portions.  (SUMF, ¶ 28; Ho Dec., ¶¶ 29-30, Exs. 18-19.)  In this

case, the '939 Patent's design has a hemispherical top portion, or applicator, and a hemispherical

base portion, which are features similar to Green, Morris, and Kao.  Where numerous similar

prior art designs exist, those designs can highlight the distinctions between the claimed design

and the accused design. *Egyptian Goddess*, 543 F.3d at 677.  Given this frame of reference, the

flat top of the Lip Revo's lip balm portion and the absence of any edge or break in the rim along

the base portion, no reasonable fact-finder would believe, taking into account the prior art, that

the Lip Revo is the same as the '939 Patent.

## IV.   CONCLUSION

For the above stated reasons, OraLabs requests summary judgment in its favor on all

issues addressed above.

Respectfully submitted,

DATED: October 31, 2014          By:    s/ Todd P. Blakely
                                        Todd P. Blakely
                                             tblakely@sheridanross.com
                                        John R. Posthumus
                                             jposthumus@sheridanross.com
                                        Patricia Y. Ho
                                             pho@sheridanross.com
                                        Justin R. Cruz
                                             jcruz@sheridanross.com
                                        SHERIDAN ROSS P.C.
                                        1560 Broadway, Suite 1200
                                        Denver, Colorado  80202-5141
                                        Telephone:     303-863-9700
                                        ATTORNEYS FOR PLAINTIFF/
                                        COUNTERCLAIM DEFENDANT ORALABS,
                                        INC.

CERTIFICATE OF SERVICE

I hereby certify that on this October 31, 2014, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record.

s/ Lori R. Brown
Lori R. Brown
Assistant to Todd P. Blakely/Robert R. Brunelli
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO  80202-5141
Telephone:  303-863-9700
Facsimile:  303-863-0223
Email:  lbrown@sheridanross.com
litigation@sheridanross.com