IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00170-PAB-KLM

ORALABS, INC., a Colorado Corporation,

     Plaintiff,

v.

THE KIND GROUP LLC, a New York Limited Liability Company, and
EOS PRODUCTS LLC, a New York Limited Liability Company,

     Defendants.

_____

**ORDER**
_____

     This matter comes before the Court on the Motion for Summary Judgment

[Docket No. 176] filed by plaintiff OraLabs, Inc. ("OraLabs") and the Motion for Partial

Summary Judgment [Docket No. 180] (public entry at Docket No. 181) filed by

defendants the Kind Group LLC ("Kind Group") and eos Products LLC.[1]  The Court has

jurisdiction pursuant to 28 U.S.C. § 1331.

**I.  BACKGROUND[2]**

     Kind Group is the assignee of United States Patent No. D644,939 (the "'939

Patent"), a design patent that covers the "ornamental design for the spherically-shaped

lip balm," as shown in the following five figures:

_____

     [1]Defendant eos Products LLC is a wholly-owned subsidiary of Kind Group.
Docket No. 129 at 2, ¶ 4.  For ease of reference, defendants will be collectively referred
to as "Kind Group."

     [2]The following facts are undisputed unless otherwise indicated.



Docket No. 182-1 at 2, 4-6.

In 2009, the Kind Group began selling the eos Smooth Sphere (the "*Smooth Sphere*"), a lip balm container based on the design of the '939 Patent.  Docket No. 176 at 2-3, Statement of Undisputed Material Facts ("SUMF") 1, 5.  Additionally, Kind Group is the owner United States Trademark Registration No. 3,778,970, which is on the Supplemental Register, for the *Smooth Sphere*'s trade dress.  *Id.* at 3, SUMF 6.

OraLabs is a manufacturer and distributor of cosmetic products.  Docket No. 1 at 2, ¶ 6.  In 2011, due to OraLabs' customer interest, OraLabs developed a product similar to the *Smooth Sphere*, which it called the Chap-Ice Lip Revolution (the "*Lip Revo*").  Docket No. 176 at 4, SUMF 9-10.  During the development of the *Lip Revo*, OraLabs engaged legal counsel to search for intellectual property rights associated with the *Smooth Sphere*.  Docket No. 176 at 4, SUMF 11.  On the advice of counsel, OraLabs' design for the *Lip Revo* included three differences compared to the design of the '939 Patent*:* (1) the *Lip Revo*'s side wall is circular in contrast to the '939 Patent, which has a small indentation on one portion of its side wall, *see* Docket No. 176 at 4, SUMF 12; *see also* Figs. 1-2 *supra*; (2) the top of the *Lip Revo* container and the top of the lip balm mound inside the container is flattened, whereas the top of the container

2

and mound of lip balm in the '939 Patent are rounded, *id.* SUMF 13; and (3) the *Lip Revo* has three vertical, raised "s"-shaped lines protruding from the side wall of the container that are not present in the '939 Patent's design. *Id.* at 5, SUMF 14. In addition, the *Lip Revo* has the word "revo" molded into the bottom of the container. *Id.* SUMF15. Both the *Lip Revo* and *Smooth Sphere* are relatively inexpensive products, typically priced between $3 and $4. Docket No. 213 at 6, Statement of Additional Disputed Facts ("SADF") 5.

OraLabs filed this case on January 24, 2013, seeking a declaration that the *Lip Revo* does not infringe the '939 Patent, that the '939 Patent is invalid, and that the *Lip Revo's* trade dress does not infringe Kind Group's trade dress. Docket No. 1 at 3-5, ¶¶ 13-27. Kind Group has asserted counterclaims for patent infringement, trade dress infringement/false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), common law trade dress infringement, unfair competition, and violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101 *et seq.* *See generally* Docket No. 129.

The parties filed cross-motions for summary judgment.[3]  OraLabs moves for summary judgment on Kind Group's trade dress claims, arguing that there is no likelihood of confusion between the *Lip Revo* and the *Smooth Sphere*, and for

---

[3]Additionally, Kind Group filed an unopposed motion to substitute sworn declarations from its experts, Jeffrey Kapec and Susan McDonald. Docket No. 234. Kind Group's motion responded to OraLabs' contention that the reports were unsworn and inadmissible. *Id.* at 2, ¶ 5. The Court will grant Kind Group's unopposed motion to file replacement exhibits.

noninfringement of the '939 Patent.  *See* Docket No. 176.[4]  Kind Group moves for

summary judgment that the design claimed in the '939 Patent and the *Smooth Sphere*

trade dress are not functional and that the '939 Patent is valid.  *See* Docket No. 180.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if

under the relevant substantive law it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary

judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An

issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a

verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

1997).  Where "the moving party does not bear the ultimate burden of persuasion at

trial, it may satisfy its burden at the summary judgment stage by identifying a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim."

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation

---

[4]OraLabs also argues, and Kind Group does not dispute, that Kind Group's remaining common law claims, common law trade dress infringement, unfair competition, unjust enrichment, and violation of the CCPA, necessarily fail if OraLabs is granted summary judgment on Kind Group's claim under the Lanham Act.  Docket No. 176 at 16.

marks omitted)).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115 (citation omitted).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III.  ANALYSIS

### A.  OraLabs' Motion for Summary Judgment

#### 1.  Trade Dress

OraLabs seeks summary judgment on Kind Group's trade dress claims on the ground that there is no likelihood of confusion between the *Lip Revo* and the *Smooth Sphere*.  Docket No. 176 at 8.  Kind Group's trade dress claim is based on Section 43(a) of the Lanham Act.  *See* 15 U.S.C. § 1125(a).  "Under § 43(a) of the Lanham Act, a [claimant] has a cause of action against any person whose use of a word, symbol or device is likely to cause confusion regarding the source or origin of the [claimant's] goods."  *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002) (citing 15 U.S.C. § 1125(a)(1)(A); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S.

205, 209 (2000)).  A product's trade dress consists of its "overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques." *Sally Beauty*, 304 F.3d at 977 (citation omitted).  To succeed at trial on its trade dress claim, Kind Group must demonstrate the following: "(1) [t]he trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) [t]here is a likelihood of confusion among consumers as to the source of the competing products; and (3) [t]he trade dress is nonfunctional." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1227 (10th Cir. 2007) (citations omitted).

OraLabs' motion challenges only the second element of Kind Group's trade dress claim, likelihood of confusion.  *See* Docket No. 176 at 8-16.  Whether the use of an allegedly infringing mark is likely to cause confusion is a determination of fact, but can be decided on summary judgment where appropriate.  *See King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999) ("Courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion.") (internal quotation marks and citation omitted).  In determining whether a likelihood of confusion exists between two products, courts consider the following non-exhaustive factors: (1) the degree of similarity between the trade dress; (2) the intent of the alleged infringer in adopting its trade dress; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be

exercised by purchasers; and (6) the strength or weakness of the trade dress.  *Id.*[5]  All

of these factors must be considered as an interrelated whole because the list of factors

is not exhaustive and no single factor is dispositive.  *Team Tires Plus, Ltd. v. Tires Plus,*

*Inc.*, 394 F.3d 831, 833 (10th Cir. 2005).  In every case, the key inquiry is whether the

consumer is likely to be deceived or confused by the similarity of the marks.

*Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 554 (10th Cir. 1998) (citation

omitted).  The determination of likelihood of confusion requires more than counting the

number of factors in favor of each side.  It requires the Court to take into account the

proper weight that each factor should be assigned.  *See Custom Mfg. & Eng'g, Inc. v.*

*Midway Servs., Inc.*, 508 F.3d 641, 649-50 (11th Cir. 2007); *Heartsprings*, 143 F.3d at

558 (finding that, because no single factor is dispositive, all relevant factors must be

weighed, properly analyzed and considered together for the court to determine

likelihood of confusion).  If the nonmovant demonstrates a genuine issue of material

fact regarding the likelihood of confusion, summary judgment is not appropriate.  *King*

*of the Mountain Sports*, 185 F.3d at 1089.

### a.  Actual Confusion

The Court first addresses the third factor, evidence of actual confusion.  *Sally*

*Beauty*, 304 F.3d at 974 ("evidence of actual confusion in the marketplace may be the

best indication of likelihood of confusion"); *Playboy Enters., Inc. v. Netscape*

*Communications Corp.*, 354 F.3d 1020, 1027 (9th Cir. 2004) (noting that evidence of

---

[5]While the Tenth Circuit's test for likelihood of confusion was designed to test
confusion between competing marks, "[t]he factors underlying a likelihood of confusion
analysis in a trademark infringement claim apply equally to trade dress infringement
claims."  *Sally Beauty*, 304 F.3d at 979.

actual confusion alone "probably precludes summary judgment").

In its reply, OraLabs suggests that the Court treat Kind Group's trade dress claim as consisting of two separate claims – one for point of sale confusion and one for post-sale confusion – and argues that summary judgment is appropriate as to each. *See* Docket No. 238 at 5-6.  OraLabs does not cite any authority, and the Court is aware of none, that treats point-of-sale and post-sale confusion as separately actionable claims under the Lanham Act.  The relevant inquiry for trade dress infringement is whether OraLabs "use[d] in commerce any . . . colorable imitation of a registered [trade dress] in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a).  The question of when in a product's life cycle the confusion occurs is irrelevant to this analysis.  *Accord, e.g.*, *United States v. Torkington*, 812 F.2d 1347, 1351 (11th Cir. 1987) (noting that "[n]othing in the plain meaning" of the Lanham Act's likelihood of confusion formulation "restricts its scope to the use of marks that would be likely to cause direct purchasers of the goods to be confused, mistaken or deceived").  Moreover, as courts have noted, protection against post-sale confusion is directly related to point-of-sale confusion because any confusion could influence the purchasing decisions of potential customers. *See, e.g.*, *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872-73 (2d Cir. 1986) (noting that post-sale confusion "seeks to prevent" the risk "that a consumer seeing the familiar [trade dress] will associate the [allegedly infringing product] with the [trade dress] and that association will influence his buying decisions"); *Insty*Bit, Inc. v.*

*Poly-Tech Indus., Inc.*, 95 F.3d 663, 672 (8th Cir. 1996) (noting that post-sale confusion affects point-of-sale confusion where "consumers are . . . first exposed to . . . products in use (that is, outside of the package) and then go to a distributor to find these [products] by attempting to match the products on the shelves with the ones they are seeking"); *Torkington*, 812 F.2d at 1352 (noting that encountering confusing products in the post-sale context creates confusion among "potential purchasers").  As such, in considering this factor, the Court declines to treat point-of-sale and post-sale confusion as separate claims.

OraLabs argues that Kind Group has no evidence of actual consumer confusion, but instead relies on a survey conducted by Dr. Bruce Isaacson.  Docket No. 176 at 13. The Court disagrees with the contention that Kind Group fails to show actual confusion. First, the Tenth Circuit recognizes survey results as evidence of actual confusion.  *Sally Beauty*, 304 F.3d at 974 (noting that evidence of actual confusion "may be introduced through surveys"); *see also Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1144 (10th Cir. 2013) ("Evidence of actual confusion is often introduced through the use of surveys, although their evidentiary value depends on the methodology and questions asked") (citation and quotation omitted).  Second, in addition to Dr. Isaacson's survey, Kind Group attaches several additional pieces of evidence of actual confusion. Specifically, Kind Group attaches:

- an email from an account manager at Walgreens to a Kind Group employee concerning a complaint about a shipment of OraLabs' *Lip Revo* products, Docket No. 216-11 at 2-5, which is evidence of point-of-sale

confusion;[6]

- a collection of Twitter posts from fans of musician Miley Cyrus that mistakenly identify *Lip Revo* products given out by Ms. Cyrus to concert-goers as eos products.  *See* Docket Nos. 215-27-215-33;[7] and

- a series of Twitter posts that reflect consumers' belief that a photograph of a green, watermelon-flavored *Lip Revo* was made by eos, which did not

---

[6]OraLabs moves to strike the Walgreens email.  Specifically, OraLabs argues that a statement of Kind Group employee Joseph Speter in the email chain, where Mr. Speter opines that Walgreens' email indicated that "[t]he [Walgreens] employees are confused as to what is Revo vs eos and sent us this issue they are having with the Revo case label by accident," was made without personal knowledge of the reason the Walgreens employee sent the email.  Docket No. 237 at 7.  Kind Group responds that the email itself, not Mr. Speter's interpretation of it, is evidence of confusion.  Docket No. 250 at 5-6.  The Court agrees with Kind Group.  The initial email reflects an incident where a senior supply planner at Walgreens contacted eos to resolve a problem with a *Lip Revo* shipment.  Docket No. 216-11 at 3; *see also* Docket No. 250-1 at 1, ¶ 3 (identifying the Walgreens employee as a Senior Supply Planner).  The email is probative of actual confusion, as it shows a representative from a retailer that sells both parties' products questioning Kind Group employees concerning OraLabs' product.  The Court therefore denies OraLabs' motion to strike the Walgreens email.  The Court does not consider whether Mr. Speter's statement is independently admissible and, for the purposes of ruling on OraLabs' motion for summary judgment, will not consider Mr. Speter's statement.

[7]OraLabs moves to strike all Twitter posts submitted by Kind Group as inadmissible hearsay.  *See* Docket No. 237 at 8-10.  Kind Group responds that the statements are not offered for the truth of the matter asserted, but rather for the mere fact of their existence, Docket No. 250 at 1-2, and, in the alternative, that the statements qualify as "state of mind" exceptions under Fed. R. Evid. 803(3).  *Id.* at 4.  Courts have held that testimony that describes incidents of actual consumer confusion is not offered for the truth of the matter asserted.  *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir. 2001) (testimony from parents relating their children's statements that confused "Duffy the Dragon" costume with the popular Barney the Dinosaur character was not offered to prove the truth of the matter asserted); *see also Sinhdarella, Inc. v. Vu*, 2008 WL 410246 at *4 (N.D. Cal. Feb. 12, 2008) (employee declarations detailing statements that reflected confusion between the parties' restaurants were not offered for the truth of the matter asserted).  The Twitter posts that Kind Group provides are even more direct than accounts of third-party statements.  Kind Group provides the statements themselves.  These statements are not hearsay and are properly considered as evidence of actual confusion.  OraLabs' motion to strike will therefore be denied.

make a watermelon flavor.  *See* Docket Nos. 215-34-215-41.[8]

Dr. Isaacson's survey results provide additional evidence of actual post-sale confusion.  Dr. Isaacson's survey found a total confusion (net of the confusion concerning the control product) of 29.3 percent.  Docket No. 215-11 at 22.  The level of confusion evidenced in the study is sufficient to create a genuine dispute of material fact.  *See Sally Beauty*, 304 F.3d at 979-80 (holding a survey that showed that 26 percent of participants believed that defendants' accused product was manufactured by plaintiff was "strong evidence of actual confusion"); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 466-67 (4th Cir. 1996) (finding that, where a survey found that approximately 30-40 percent of the consuming public was confused, "even if the true figure were only half of the survey estimate, actual confusion would . . . nevertheless exist to a significant degree"); *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 279 (7th Cir. 1976) (finding that a confusion rate of 15% was evidence of more than *de minimis* confusion).

OraLabs argues that Dr. Isaacson's survey is irrelevant because he used an overly narrow survey universe, improperly surveyed confusion as to the *Lip Revo* and *Smooth Sphere* products themselves without including the products' point-of-sale packaging, and used improper questions that did not provide a "don't know" response. Docket No. 176 at 13.  OraLabs argues that its rebuttal expert report, conducted by Mr. Philip Johnson, corrected a faults in Dr. Isaacson's methodology and found a net

---

[8]The Court notes that two of the Twitter posts attached to Kind Group's Exhibit 41, while not hearsay, are not evidence of actual confusion, as the consumers indicate in these posts that they understand that the green *Lip Revo* was not made by eos.  *See* Docket No. 215-41 at 2, 4.

confusion rate of only 5.8 percent.  *Id.* at 15.  The Court has already denied OraLabs'

motion to strike Dr. Isaacson's survey and expert testimony on the same grounds.  See

Docket No. 377.  Nor can the Court decide at the summary judgment stage that Mr.

Johnson's conclusions are entitled to greater weight than Dr. Isaacson's.  "[C]ompeting

expert opinions present the classic battle of the experts and it is up to a jury to evaluate

what weight and credibility each expert opinion deserves."  *Phillips v. Cohen*, 400 F.3d

388, 399 (6th Cir. 2005) (citation, quotation, and alteration marks omitted).

Finally, OraLabs argues that, before the Court may consider the possibility of

post-sale confusion, Kind Group was required to introduce evidence that consumers

frequently encounter the products "visible in a closed state, as opposed to in an open,

in-use position with the top off and the lip balm visible."  Docket No. 238 at 6.  OraLabs

cites no authority for such a requirement.  The case that OraLabs principally relies

upon, *Insty*Bit*, found a genuine issue of fact that precluded summary judgment

because the plaintiff had demonstrated that "consumers are often first exposed to its

products in use."  95 F.3d at 672.  The *Insty*Bit* court did not, however, go so far as to

make such a showing a requirement.  Here, Kind Group cites marketing materials for

both the *Lip Revo* and *Smooth Sphere* that depict the products in their closed state

without any accompanying secondary packaging.  Docket No. 213 at 6, SADF 3; *see*

*also* Docket No. 215-20 at 2 (OraLabs marketing material featuring closed *Lip Revo*

containers in various colors); Docket No. 215-21 at 2, 4 (Kind Group marketing material

featuring closed *Smooth Sphere* containers without secondary packaging); Docket No.

215-22 at 2-5 (same).  The Court finds that evidence of the marketing materials for both

products that depict them in their closed state without secondary packaging, *i.e.*, the packaging that accompanies the products when displayed in the retail environment, is sufficient for the Court to consider Kind Group's evidence of post-sale confusion.

Considering the above-described evidence of actual confusion, the Court finds that this factor weighs in favor of Kind Group.

### b.  Similarity of Marks

OraLabs argues that the secondary packaging of the *Lip Revo* and *Smooth Sphere* is "quite dissimilar."  Docket No. 176 at 11.  Kind Group responds that OraLabs' secondary packaging features the shape of the product and is often presented in an environment where word marks – such as OraLabs' mark – are obscured.  Docket No. 213 at 13; *see also* Docket No. 215-10 at 2.

Regarding the products themselves, as opposed to the products in their point-of-sale packaging, OraLabs points to the three design differences that purportedly distinguish the *Lip Revo* from the *Smooth Sphere*, namely, the absence of an indentation in the side wall, the flattened top of the container and the product mound,[9] and the three raised "s"-shaped lines.  *Id.* at 11.

In assessing the similarity of marks, the court must determine whether the allegedly infringing mark will confuse the public when singly presented, rather than when presented side-by-side with the protected mark.  *King of the Mountain Sports*, 185 F.3d at 1089.  The context of the marks as a whole must be evaluated as they are encountered by consumers in the marketplace.  *Id.* at 1090.  Additionally, "similarities

---

[9]As used in this order, "product mound" refers to the lip balm within the container.

are weighed more heavily than differences, particularly when the competing marks are used in virtually identical products packaged in a similar manner." *Sally Beauty*, 304 F.3d at 972 (citing *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986) ("*Beer Nuts II*")).

The Court finds that this factor weighs in favor of Kind Group.  The *Lip Revo* and *Smooth Sphere* are both egg-shaped lip balms that come in bright colors.  Even recognizing the differences between the products, the Court finds that, weighing the products' similarities more heavily than their differences, a reasonable jury could find that consumers are likely to be confused when presented with the *Lip Revo* in the marketplace.  Because the Court finds that a reasonable jury could find the *Lip Revo* visually confusing in the post-sale context, it need not address OraLabs' argument regarding the difference between the products' secondary packaging.  *Gen. Motors*, 500 F.3d at 1227 (recognizing that post-sale confusion is actionable under the Lanham Act).

### c.  Intent

Under this factor, a court must determine whether the alleged infringer had the intent to derive a benefit from the reputation or goodwill of an existing mark.  *King of the Mountain Sports*, 185 F.3d at 1091.  Intent to copy a product's design features is given minimal weight in the trade dress context.  *Groeneveld Transport Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 516 (6th Cir. 2013) ("the proper application of trademark law requires us to focus our analysis not on the intent to copy the product

design, but on the likelihood of consumer confusion").[10]

The Court finds that this factor favors OraLabs.  Although OraLabs acknowledges that its intent in developing the *Lip Revo* was to make a product similar to the *Smooth Sphere*, Docket No. 176 at 4, ¶¶ 9-10, Kind Group points to no evidence that OraLabs intended to deceive consumers into believing that Kind Group was the manufacturer of the *Lip Revo*.  "The appropriate 'intent' to focus on is not the intent to *copy* but rather the intent to *deceive or confuse.*"  *Groeneveld*, 730 F.3d at 514 (emphasis in original).  The only evidence that Kind Group points to is evidence that OraLabs intended to design a similar product.  *See* Docket No. 213 at 9.  Trademark law does not protect against competition from imitative products, however.  *See Groeneveld*, 730 F.3d at 511; *Water Pik*, 726 F.3d at 1159 (finding the intent factor was neutral where the plaintiff's evidence "suggest[ed] only that [defendant] intended to manufacture products that were similar to [plaintiff's]").  Evidence of intent to imitate Kind Group's trade dress does not, therefore, constitute evidence of intent to deceive.

### d.  Similarity of Products and Manner of Marketing

OraLabs concedes that the *Lip Revo* and *Smooth Sphere* are the same type of product, come in the same type of secondary packaging, and are sold at some (but not all) of the same retailers.  Docket No. 176 at 9.  This factor, therefore, weighs in favor of

---

[10]The cases cited by Kind Group suggest that intent to copy creates a presumption of likelihood of confusion.  *See* Docket No. 213 at 9.  Those cases, however, discuss this factor in the trademark context.  The Tenth Circuit recently clarified that "[w]hen [it has] said that evidence of intent to copy may justify an inference of likelihood of confusion, [it was] referring to copying a particular *mark*, not copying a competitor's product."  *Water-Pik, Inc. v. Med-Sys, Inc.*, 726 F.3d 1136, 1157 (10th Cir. 2013) (emphasis in original).

Kind Group.

### e. Degree of Care Exercised by Consumers

Kind Group argues that the *Smooth Sphere* and *Lip Revo* are inexpensive items that cost either $4 (for the *Smooth Sphere*) or $3 (for the *Lip Revo*) and that are typically regarded as "impulse items."  Docket No. 213 at 14; *see also* Docket No. 215-10 at 2.  OraLabs does not argue otherwise and instead states that the factor is neutral because of the "significant differences" between the two products.  Docket No. 176 at 15.  The Court agrees with Kind Group.  As Kind Group notes, the Tenth Circuit has recognized that confusion is more likely with "inexpensive items that may be purchased on impulse" than "expensive items which are chosen carefully."  *Beer Nuts II*, 805 F.2d at 926.  This factor therefore weighs in favor of Kind Group.

### f. Strength of the Trade Dress

"The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion."  *Sally Beauty*, 304 F.3d at 975.  "Trademark strength is measured by its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source."  *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 939 (10th Cir. 1983) ("*Beer Nuts I*").  In the trade dress context, discussion of this factor overlaps with the issue of whether or not the trade dress has acquired secondary meaning.  *See Sally Beauty*, 304 F.3d at 979 (finding that this factor weighs against likelihood of confusion where there exists a genuine issue of material fact as to whether the product had acquired secondary meaning).  As a result, evidence of the strength of a mark can include "direct evidence, such as consumer

surveys or testimony from consumers" as well as "the length and manner of [the trade dress's use], [] the nature and extent of advertising and promotion of the [trade dress], and [] the efforts made in the direction of promoting a conscious connection, in the public's mind, between the [trade dress] and a particular product or venture." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1218 (10th Cir. 2004). The Tenth Circuit has also held that evidence of intentional copying and sales volume can be considered evidence of the strength of a mark. *Sally Beauty*, 304 F.3d at 978.

OraLabs argues that Kind Group's mark is weak for two reasons: first, because Kind Group owns only a Supplemental Registration for the *Smooth Sphere*'s trade dress, and second, because OraLabs identifies two other companies that produce a spherical or ball-shaped lip balm. Docket No. 176 at 16. In response, Kind Group points to $185 million in total sales of the *Smooth Sphere*, over $25 million spent on advertising, "substantial media coverage," and evidence of copying. Docket No. 213 at 16. Kind Group also points to the results of a double-blind survey conducted by Dr. Susan McDonald that showed that 35% of respondents associated the *Smooth Sphere* with eos. *Id.* OraLabs offers no rebuttal evidence concerning secondary meaning, but argues that Dr. McDonald's survey is not evidence of secondary meaning because she only surveyed females between the ages of 13-35 instead of lip balm purchasers as a whole, used an improper control stimulus, used leading questions, and biased her results. Docket No. 238 at 9. OraLabs' challenge to Dr. McDonald's survey are perfunctory at best – OraLabs provides no analysis of these alleged defects and instead simply cites to a rebuttal expert report. The Court finds that, at best, OraLabs

has identified possible technical flaws in Dr. McDonald's survey that go to the weight of her opinion rather than its admissibility. *See Minn. Specialty Crops, Inc. v. Minn. Wild Hockey Club, LP*, 2002 WL 1763999 at *2 (D. Minn. 2002) ("technical flaws in consumer confusion studies should bear on the weight accorded them, not on their admissibility") (citation omitted). The Court finds that Dr. McDonald's report is admissible evidence from which a reasonable jury could conclude that the *Smooth Sphere* features strong trade dress. The Court finds that, given Dr. McDonald's survey and the undisputed evidence of copying – namely, that OraLabs manufactured the *Lip Revo* because its customers requested a "product similar to the eos *Smooth Sphere*," Docket No. 176 at 4, SUMF 9 – this factor favors Kind Group.

### g. Summary Judgment is Inappropriate

The determination of likelihood of confusion requires more than counting the number of factors in favor of each side. It requires the Court to take into account the proper weight that each factor should be assigned. *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649-50 (11th Cir. 2007); *Heartsprings*, 143 F.3d at 558 (finding that, because no single factor is dispositive, all relevant factors must be weighed, properly analyzed and considered together for the court to determine likelihood of confusion). Here, the intent to deceive factor favors OraLabs. However, as discussed above, this factor is given minimal weight in the trade dress context when compared with factors demonstrating likelihood of confusion. *Groeneveld*, 730 F.3d at 516. The remaining factors favor Kind Group. The Court gives moderate weight to the similarity of the products and the strength of Kind Group's trade dress, and substantial

weight to evidence of actual confusion.  The Court finds that, given a balancing of the likelihood of confusion factors, a reasonable jury could conclude that there exists a likelihood of confusion between the *Lip Revo* and *Smooth Sphere*.  Summary judgment is therefore inappropriate.

### 2.  Infringement of the '939 Patent

"A design patent protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent."  *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1370-71 (Fed. Cir. 2006) (citation and quotation omitted).  Design patent infringement is a question of fact that must be proven by a preponderance of the evidence and requires a showing that the accused design is substantially the same as the claimed design.  *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993).  An accused device infringes upon a design patent if "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design."  *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).  In evaluating infringement, the Court must ask whether "the deception that arises is a result of similarities in the overall design, not of similarities in ornamental features considered in isolation."  *Amini*, 439 F.3d at 1371.

The test for design patent infringement is a two-step process.  First, the Court compares the claimed design and the accused product to determine if "the claimed design and the accused design [are] . . . sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear

'substantially the same' to the ordinary observer." Egyptian *Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).  Second, if the claimed and accused designs are not plainly dissimilar, the Court compares the claimed and accused designs with the prior art.  *Id.*  "When the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art.  If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance in the eye of the hypothetical ordinary observer."  *Crocs,* 598 F.3d at 1303 (citation omitted).   "Where there are many examples of similar prior art designs . . . differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art."  *Egyptian Goddess*, 543 F.3d at 678.

### a.  Step One

At step one of the infringement analysis, OraLabs highlights three primary differences between the *Lip Revo* and the '939 Patent: the flat top of the lip balm mound on the *Lip Revo*, the circular (rather than partially indented) side wall, and the three raised "s" shaped curves on the side wall.  OraLabs summarizes the differences between the *Lip Revo* and the '939 Patent in a side-by-side comparison of the Lip Revo and the figures comprising the '939 Patent's claimed design:



Docket No. 176 at 18-19. Kind Group responds that OraLabs improperly focuses on individual features rather than the overall designs of the products, that the designs are "both generally egg-shaped, and share similar proportions throughout," and that "the few differences cited by OraLabs . . . do not detract from the overall similarity in appearance of the two designs." Docket No. 213 at 18-19.

The issue of whether the products are substantially the same under the ordinary observer test is typically the province of the finder of fact. *See Amini*, 439 F.3d at 1371 (noting that in design patent infringement cases, "conclusions about reasonable jurors are difficult to make on an issue of this factual dimension"); *see also Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1383 (Fed. Cir. 2004), *vacated on other grounds by Egyptian Goddess*, 543 F.3d at 678 (noting that design patent infringement is a "factual inquir[y] that [is] undertaken by the fact finder during the infringement stage of proceedings"). Without reaching a conclusion on the ultimate question of infringement, the Court agrees with Kind Group that the '939 Patent and the *Lip Revo* are not so plainly dissimilar as to justify summary judgment at step one. Although OraLabs notes three differences between the designs, the Court cannot conclude, based on those differences alone, that no reasonable jury could find that the designs are not substantially the same. Notably, the designs need not be identical for a finding of infringement. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) (noting that "minor or trivial differences . . . necessarily exist between any two designs that are not exact copies of one another" and do not preclude a finding of infringement). The Court finds that Kind Group has identified enough similarities that

the question of whether the products are substantially the same is more properly resolved by a jury.

### b. Step Two

At step two, the prior art step, OraLabs bears the burden to "call to the court's attention the prior art that an ordinary observer is most likely to regard as highlighting the differences between the claimed and accused design." *Egyptian Goddess*, 543 F.3d at 679.  OraLabs identifies three prior art references that it claims would magnify the differences between the *Lip Revo* and the '939 Patent in the eyes of an ordinary observer.  Docket No. 176 at 19-20 (referencing *id.* at 8, SUMF 28).  Those are U.S. Patent Nos. D554, 529 ("Green I"), D266,146 ("Morris"), and 4,765,501 ("Kao").



Docket No. 176 at 8.  Green I describes a design for a spherically shaped perfume applicator.  *See* Docket No. 177-8 at 1.  Morris describes a design for a dispensing container with a cylindrical base and a rounded, hemispherical top.  *See* Docket No. 177-9 at 1-2.  Kao is a utility patent for a toy container comprised of a lower shell and an upper shell, where the upper shell is hemispherical.  Docket No. 177-10 at 1.  Kind Group argues that OraLabs' prior art references only further highlight the similarities between the *Lip Revo* and the '939 Patent.  Docket No. 213 at 20.  Specifically, Kind

Group notes that *Green I* is a "perfect sphere" and both Morris and Kao have different base shapes, while the '939 Patent and *Lip Revo* are egg-shaped.  *Id.*[11]

The Court agrees that OraLabs' three prior art references do not support its conclusion that, upon observation of the prior art, "no reasonable fact-finder would believe . . . that the Lip Revo is the same as the '939 Patent."  Docket No. 176 at 20.  First, step two is meant for cases where the relevant "field is crowded with many references relating to the design of the same type of appliance."  *Egyptian Goddess*, 543 F.3d at 676 (citing *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)); *see also Great Neck Saw Mfrs., Inc. v. Star Asia U.S.A., LLC*, 727 F. Supp. 2d 1038, 1053 (W.D. Wash. 2010) (noting that step two analysis requires a narrow focus on differences between designs "[w]hen a field is crowded with many designs").  OraLabs does not cite to a single prior art reference that describes a lip balm container.  OraLabs instead provides as prior art references a design for a perfume applicator (Green I), a cylindrical all-purpose "dispensing container" with a hemispherical applicator portion (Morris), and a toy container with a hemispherical top portion (Kao).  OraLabs essentially argues that a narrow focus on the differences between the *Lip Revo* and the '939 Patent is appropriate because other designers have incorporated hemispherical shapes into portions of their designs, regardless of the product category.

---

[11]OraLabs refers to the '939 Patent's product mound and base as "hemispherical" in shape, *see* Docket No. 176 at 19, and the '939 Patent is titled "spherically-shaped lip balm."  *See* Docket No. 182-1 at 2.  Although the Court agrees that "hemispherical" is a fair characterization of the shapes of the base portion and product mound described in the figures of the '939 Patent, when these features are viewed in combination, the round base and smaller, elongated product mound create an egg-shaped or ovoid visual impression.

OraLabs cites no case where a court has found noninfringement at the summary judgment stage based on a comparison of the patent-in-suit with designs for unrelated products based only on a common shape.

Assuming *arguendo* that Morris' design of an all-purpose "dispensing container" could be interpreted to include a lip balm dispenser, the Court finds that, while a hypothetical observer could see that a hemispherical product mound is a common element in lip balm design, the '939 Patent is not so similar to Morris that no reasonable jury could find that the *Lip Revo* and the '939 Patent are substantially the same:



The image on the left is Figure 1 from the '939 Patent; the image on the right is a figure from Morris. The only common element between the '939 Patent and Morris is the hemispherical product mound. *Compare* Docket No. 177-9 at 1 *with* Docket No. 182-1 at 4-6. Morris' base is long and cylindrical, as opposed to the '939 Patent's hemispherical base with a flattened bottom, and the designs have dramatically different proportions. *Id.* The *Lip Revo*, by contrast, has a similar hemispherical base with a flattened bottom and similar proportions to the '939 Patent. *See supra* Part III(A)(2)(a). The Court finds no support for the proposition that a hypothetical ordinary observer

familiar with Morris would magnify the differences between the *Lip Revo* and the '939 Patent.

Second, as Kind Group argues, even if the Court were to look beyond the lip balm category, OraLabs has not identified any prior art references that incorporate the egg shape described in the '939 Patent.  Green describes a container and product mound that are spherical, not egg-shaped.  *See* Docket No. 177-8 at 1.  Kao has a hemispherical upper shell, but its lower shell is significantly shorter than the upper shell and has very different proportions than the '939 Patent.  *Compare* Docket No. 177-10 at 1 *with* Docket No. 182-1 at 4-6.

In sum, OraLabs has not satisfied its burden to introduce prior art references that would cause a hypothetical ordinary observer, familiar with the prior art, to magnify the differences between the *Lip Revo* and the '939 Patent's claimed design.  The Court finds that a reasonable jury could conclude that the designs of the *Lip Revo* and the '939 Patent would appear substantially the same to an ordinary observer familiar with the prior art.  Summary judgment is therefore inappropriate.

### B.  Kind Group's Motion

#### 1.  Functionality of the '939 Patent's Design

Kind Group seeks summary judgment that the '939 Patent is not functional.  "[A] design patent, unlike a utility patent, limits protection to the ornamental design of the article."  *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).  "Applying the presumption of validity, 35 U.S.C. § 282, invalidity of a design patent [on functionality grounds] must be established by clear and convincing evidence."  *L.A.*

*Gear*, 988 F.2d at 1123. "[T]he design of a useful article is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article. . . . If the particular design is essential to the use of the article, it can not be the subject of a design patent." *Id.* To determine whether a design is primarily functional or ornamental, "the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article, in determining whether the claimed design is dictated by the utilitarian purpose of the article." *Id.* (citations omitted). Additionally, when assessing whether a claimed design is dictated by functional considerations, courts consider "1) whether the protected design represents the best design; 2) whether alternative designs would adversely affect the utility of the specified article; 3) whether there are any concomitant utility patents; 4) whether the advertising touts particular features of the design as having specific utility; [and] 5) whether there are any elements in the design or an overall appearance clearly not dictated by function." *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1315-16 (citation, quotation, and alteration marks omitted).

OraLabs argues that there is an issue of fact concerning whether the '939 Patent is functional because there is evidence of the third factor, a related utility patent. Docket No. 209 at 8-12. OraLabs points to U.S. Patent No. 8,444,337 (the "'337 Patent"), titled "Lip Balm With Spherical Surface and Method for Producing," of which Kind Group is the assignee. Docket No. 209 at 3, response to SUMF 9.

OraLabs notes two specific elements in the '939 Patent's design that are claimed in the '337 Patent: the depression in the side wall, which the '337 Patent claims "accommodates the thumb of a user to facilitate the opening and closing of the

27

receptacle by alternatingly separating and connecting the upper portion [] and the lower[]," and the spherical shape of the lip balm, which the '337 Patent claims produces "[d]esirable tactile sensations result[ing] from the spherical shape having a larger exposed surface area" and use benefits including "the ability to apply the lip balm material to both lips simultaneously." *Id.* at 9-10. Kind Group responds that there are several ways to achieve the function of manufacturing a lip balm product, which alone defeats the claim that the design is dictated by function; that OraLabs discussed only one of the five *High Point* factors; and that OraLabs improperly focuses on the functionality of specific features and not whether the overall design is dictated by functionality.

The Court agrees with Kind Group that there is no genuine dispute of fact as to the functionality of the overall design of the '939 Patent. First, OraLabs does not contest that there are many different ways to manufacture a lip balm container that do not rely on the design claimed in the '939 Patent. *See* Docket No. 209. This weighs heavily against a finding of functionality. *L.A. Gear*, 988 F.2d at 1123 ("[w]hen there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose").

Second, OraLabs focuses only on two specific features that it argues serve a function – the spherical shape of the lip balm and the indentation that accommodates the thumb of the user. *See* Docket No. 209 at 9, 10. The existence of functional features, however, is not the relevant inquiry. Rather, OraLabs must show by clear and convincing evidence that the "overall appearance of the article" is "dictated by [the

28

article's] utilitarian purpose." *L.A. Gear*, 988 F. 2d at 1123. OraLabs' only argument that the "overall appearance" of the '939 Patent is functional is a reference to its invalidity contentions, where OraLabs states that the "claimed design of the '939 Patent is primarily functional not ornamental." Docket No. 209 at 14 (citing Docket No. 182-22 at 3). OraLabs' assertion that the overall design is ornamental, however, is insufficient to create a genuine dispute of material fact.

OraLabs also argues that the '337 Patent claims cost benefits to the spherical design in the '939 Patent over "traditional lip balm shapes." Docket No. 209 at 10. The Court disagrees. The portion of the '337 Patent that OraLabs cites claims cost benefits from the "hot pour" method over the "bullet method" for filling lip balm containers. *Id.*; *see also* Docket No. 211-1 at 8. The '337 Patent does not claim any cost savings due to the spherical shape of the container or the impression in the container's side wall. *Id.*

Finally, the Court notes that OraLabs' failure to produce evidence concerning four of the five *High Point* factors – the "best design," whether alternative designs would adversely affect the utility of the container, whether advertising touts functional features, and whether any elements are clearly not dictated by function – weighs in favor of summary judgment. In sum, the Court finds that, given that OraLabs has failed to raise a genuine issue of material fact that the overall appearance of the '939 Patent is not dictated by function, summary judgment is appropriate.

### 2. Functionality of the Smooth Sphere's Trade Dress

Kind Group states that its trade dress "consists of a solid colored, substantially spherical plastic container composed of interlocking portions, which join around the

middle to encase a substantially hemispherical lip balm product." Docket No. 180 at 7. In determining the functionality of trade dress, courts first ask whether the claimed trade dress is "essential to the use or purpose or the article or if it affects the cost or quality of the article." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982). If an object is not found to be functional under this formulation, courts consider whether the "exclusive use" of the claimed trade dress "would put competitors at a significant non-reputation-related disadvantage." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32-33 (2001); *see also Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1272 (10th Cir. 1988) ("[w]hether the feature is functional should turn on whether the protection of the [feature] would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods") (citation and quotation omitted). Under the competitive necessity test, if a "feature or combination of features must be slavishly copied in order to have an equally functional product, then the feature or combination is not entitled to protection. But if the feature or combination of features enables the second-comer simply to market his product more effectively, it is entitled to protection." *Id.* at 1273 (quoting *Brunswick Corp. v. Spirit Reel Co.*, 832 F.2d 513, 519 (10th Cir. 1987) (alteration marks omitted). Unlike in the design patent context, where the burden is on the alleged infringer to prove invalidity (including functionality) by clear and convincing evidence, the party asserting trade dress infringement bears the burden of demonstrating that the trade dress is not functional. *Samara Bros.*, 529 U.S. at 209.

### a. Essential to the Use of the Article

Kind Group argues that the overall design of the *Smooth Sphere* is not essential

to the use or purpose of lip balm.  Docket No. 180 at 8.  In support, Kind Group notes that it is undisputed that there are "many alternative designs for lip balm packaging available in the market that accomplish the same purpose, such as a stick, tube or pot design."  *Id.*  OraLabs does not contest this point.  Indeed, OraLabs' CEO testified that there are different types of lip balm containers available and that OraLabs offers different lip balm packaging that is similar to those offered by various other name brands, including a squeeze tube, a "jar," and a "twist-up stick."  Docket No. 183-3 at 6, 74:3-14, 75:7-14, 18-24, 76: 2-5.

The fact that alternative designs exist, however, does not end the analysis. *Groeneveld*, 730 F.3d at 506 ("The issue is not whether the [alleged infringer] could have designed a [product] with a different appearance").  The Court must determine whether the overall design of the *Smooth Sphere*'s trade dress was "influenced by functional imperatives or preferences."  *Id.*; *see also TrafFix Devices*, 532 U.S. at 34 (finding that the crucial determination is not the availability of alternative designs, but whether the design at issue is "the reason the device works").  The Court finds that there is no evidence that the *Smooth Sphere*'s egg-shaped design was influenced by functional imperatives or preferences or is "the reason the device works."  OraLabs argues that the '337 Patent is evidence that the *Smooth Sphere*'s trade dress is dictated by function.  The Court disagrees.  The case that OraLabs cites provides only that the existence of a utility patent is strong evidence that "the features therein claimed are functional."  *TrafFix Devices*, 532 U.S. at 29-30.  A utility patent is not, however, necessarily evidence that the trade dress is functional.  "A combination of features may

31

be nonfunctional and thus protectable, even though the combination includes functional features." *Hartford House*, 846 F.2d at 1272; *see also McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 312 (4th Cir. 2014) (finding that a utility patent was not evidence of functional trade dress where the claimed design was "not the central advance of any utility patent") (citation omitted). As with its arguments concerning the functionality of the '939 Patent, OraLabs' only argument concerning the overall design of the *Smooth Sphere's* trade dress is by reference to its invalidity contentions. Docket No. 209 at 14-15. The bare assertion that the overall design is functional, however, is not evidence. The Court concludes that no reasonable jury could find that the overall appearance of the *Smooth Sphere* is essential to its function.

### b. Affects the Cost or Quality of the Article

Kind Group argues that the *Smooth Sphere*'s trade dress does not affect the cost or quality of the article because it results from a more expensive method of manufacture than other methods of making lip balm containers. Docket No. 180 at 8. Kind Group introduces evidence from its expert, Jeffrey Kapec, and points to the testimony of OraLabs' CEO that the *Lip Revo* is the most expensive of the various lip balm containers that OraLabs produces. *Id.* at 8-9. OraLabs challenges Mr. Kapec's testimony, arguing that he improperly included early stage investments and costs that reflect the initial production run, which, according to OraLabs, means that Mr. Kapec's conclusions do not reliably indicate that the higher cost of manufacturing the *Smooth Sphere* is a result of its trade dress. Docket No. 209 at 14. The Court need not resolve this issue. As Kind Group notes, OraLabs' CEO admitted that the *Lip Revo* is the most

expensive lip balm container shape that OraLabs manufactures, based on his personal knowledge of the amount of plastic, the type of tooling required, and the machinery used in the manufacturing process.  Docket No. 183-3 at 8, 92:15-93:7.  Based on this testimony, it is undisputed that the *Smooth Sphere*'s trade dress is not essential to achieving cost savings in the manufacture of competing products.  As such, the Court finds that the *Smooth Sphere*'s trade dress does not affect the cost or quality of the article.

### c. Competitive Necessity

The competitive necessity test asks whether, if a device has not been found to be essential to the use of the article or affecting its cost or quality, the trade dress "serves a significant nontrademark function," the exclusive protection of which would hinder competition.  *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 170 (1995).  The question, therefore, is whether the "exclusive use" of the claimed trade dress "would put competitors at a significant non-reputation-related disadvantage." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32-33 (2001); *see also Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1272 (10th Cir. 1988) ("[w]hether the feature is functional should turn on whether the protection of the [feature] would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods") (citation and quotation omitted).  In such cases, the trade dress is said to be "aesthetically functional."  *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 222 (2d Cir. 2012).  As described more fully by the Second Circuit:

> On the one hand, where an ornamental feature is claimed as a trademark and trademark protection would significantly hinder competition by limiting the range of adequate alternative designs, the aesthetic functionality doctrine denies such protection.  But on the other hand, distinctive and arbitrary arrangements of predominantly ornamental features that do *not* hinder potential competitors from entering the same market with differently dressed versions of the product are non-functional, and are hence eligible for trademark protection.

*Id.* (emphasis in original).  The Tenth Circuit has held that "the determination of [whether a design is ] functional in this setting . . . should . . . rest on whether alternative appealing designs or presentations of the product can be developed." *Brunswick Corp.*, 832 F.2d 513, 519.  As discussed above, it is undisputed that alternative designs exist. The Court finds, therefore, that no reasonable jury could conclude that trademark protection for the *Smooth Sphere*'s trade dress would put competitors at a significant non-reputation-related disadvantage.

### 3.  Validity of the '939 Patent

Kind Group seeks summary judgment that the '939 Patent is not invalid as anticipated or obvious.  "A patent is presumed valid, and the burden of establishing invalidity as to any claim of a patent rests upon the party asserting such invalidity. Clear and convincing evidence is required to invalidate a patent." *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1015 (Fed. Cir. 2006); *see also L.A. Gear*, 988 F.2d at 1123 ("invalidity of a design patent must be established by clear and convincing evidence").

### a.  Anticipation

A patent may be found invalid as a matter of law if it is anticipated.  35 U.S.C. § 102.  To determine whether a design patent is invalid as anticipated by prior art,

34

courts apply the same "ordinary observer" test used for infringement.  *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009).  Thus, anticipation in the design context involves comparing the patent-in-suit with the relevant prior art and determining whether a hypothetical ordinary observer would find that the designs are substantially the same.  *See id.*  OraLabs notes that its expert, Michael Thuma, found that the '939 Patent was anticipated by Green I, with the caveat that Mr. Thuma assumed that the flat edge in the '939 Patent was functional and thus not part of the claimed design.  Docket No. 209 at 15; *see also* Docket No. 182-20 at 25-26.  Kind Group argues that Mr. Thuma's conclusion was based on an improper reduction of the '939 Patent and *Green I* to two verbal elements: a hemispherical base and a hemispherical applicator.  Docket No. 180 at 12.  The Court need not decide at this juncture whether the flat edge on the side wall in the '939 Patent is functional.  The Court finds that, even accepting OraLabs' construction, which omits the flat edge, no jury could conclude that the ordinary observer would believe that the '939 Patent and Green I are the same design.  Figures 1-3 of Green I are depicted below:



Docket No. 182-2 at 3-4.  Comparing the overall design of the Green I figures with the

figures that comprise the scope of the '939 Patent, the Court finds that an ordinary

observer would not believe that the '939 Patent and Green I are substantially the same.

First, as noted above, the '939 Patent is egg-shaped while the Green I design appears

to be a perfect sphere.  Second, the product mound of Green I has the same shape as

the base, a perfect sphere, while the product mound of the '939 Patent is smaller

proportionately and has an ovoid shape.  *Compare id. with* Docket No. 182-1 at 4-6.

These differences in proportion and overall shape result in a different overall visual

impression.  *See Voltstar Techs., Inc. v. Amazon.com, Inc.*, 2014 WL 3725860 at *4

(N.D. Ill. July 28, 2014) (granting summary judgment where the ordinary observer would

note that the patent-in-suit had a "squatter proportion" than the accused design and

where the accused design created an "oval effect" as opposed to the patent-in-suit,

which "create[d] an effect of a flat top and bottom with rounded corners and slightly

arced sides").

### b.  Obviousness

Obviousness is a question of law based on underlying facts.  *Graham v. John*

*Deere Co.*, 383 U.S. 1, 17-18 (1966).  "In the design patent context, the ultimate inquiry under [35 U.S.C. §] 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved."  *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (citation and internal quotations omitted).  Assessing the obviousness of a design patent is a two-step process.  First, "one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design"; second, "[o]nce this primary reference is found, other references may be used to modify it to create a design that has the same overall visual appearance as the claimed design."  *Id.*  (citation and internal quotations omitted).  "[T]he ultimate inquiry is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved."  *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012).  Additionally, as part of its obviousness analysis, the Court is required to describe the claimed design in words so the parties and appellate courts can discern the court's reasoning in identifying a primary reference.  *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1332 (Fed. Cir. 2014).

The '939 Patent is comprised of a container with a hemispherical base and a flattened bottom that contains a mound of product, smaller than the base, shaped like the top half of an egg.

OraLabs identifies two design patents that it claims are primary references for the '939 Patent, *Green I* and U.S. Patent No. D564,900 ("Green II").  Green II, like Green I, is a spherical container with a flat base, but Green II describes only the

spherical container and does not describe a product mound.   Green II is depicted below:



Fig 1

Docket No. 182-3 at 2.  The Court finds that neither Green I nor Green II is an appropriate primary reference because neither claims a design that is "basically the same" as the '939 Patent.  As discussed above, the design claimed in *Green I* is spherical rather than egg-shaped.  *See In re Harvey*, 12 F.3d 1061, 1064 (Fed. Cir. 1993) (reversing decision by the Board of Patent Appeals and Interferences of the Patent and Trademark Office that a design patent that claimed a vase "formed by the intersection of an egg-shaped hyperboloid with a truncated pyramid or an oblate ellipsoid with a pentagonal cylinder" was obvious in light of a "prior art vase formed by the intersection of a sphere and a cube").  This difference in shape alone means that the two designs are not "basically the same."  *See Apple,* 678 F.3d at 1326 (finding that a design patent that described a rectangular phone with a "arched, convex front" was not a primary reference for the patent-in-suit, which described a "perfectly flat" face).  Moreover, as discussed above, the product mound in Green I mimics the hemispherical

shape of the base and is roughly the same size and proportion, creating the visual impression of a sphere.  This is a different visual impression than the '939 Patent.  The shape of the top and bottom of the container in Green II suffers from similar defects: the container is spherical, and it lacks any sort of product mound.

In sum, the Court finds that OraLabs has not shown a genuine dispute of material fact concerning whether it can meet its burden at trial to prove by clear and convincing evidence that the '939 Patent is invalid.  Summary judgment in favor of Kind Group on the issue of validity is appropriate.

### 4. Inventorship of the '939 Patent

Kind Group seeks summary judgment on OraLabs' second and third affirmative defenses, which state that the '939 Patent is unenforceable and/or invalid for misjoinder or non-joinder of inventors.  Docket No. 180 at 17; *see also* Docket No. 130 at 12.  On March 11, 2015, the Court granted Kind Group's Motion for Order Setting Notice and Hearing to Correct Inventorship of Patent.  Docket No. 285.  A hearing on the inventorship of the '939 Patent took place on May 1, 2015.  *See id.*  A separate order will issue.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff OraLabs, Inc.'s Motion for Summary Judgment [Docket No. 176] is **DENIED**.  It is further

**ORDERED** that defendants The Kind Group LLC and eos Products LLC's Motion for Partial Summary Judgment [Docket No. 180] (public entry Docket No. 181) is

**GRANTED** in part and **DENIED** in part.  It is **GRANTED** to the extent that it seeks summary judgment that United States Patent No. D644,939 and defendants' trade dress are not functional and to the extent that it seeks summary judgment that United States Patent No. D644,939 is not invalid due to anticipation or obviousness.  It is **DENIED** as moot to the extent that it seeks summary judgment as to OraLabs' affirmative defenses that United States Patent No. D644,939 is unenforceable and invalid due to misjoinder or non-joinder of inventors.  It is further

ORDERED that plaintiff OraLabs, Inc.'s Motion to Strike Certain Inadmissible Evidence Pursuant to Fed. R. Civ. P. 56(c)(2) [Docket No. 237] (public entry Docket No. 246) is **DENIED** to the extent it seeks to strike defendants' exhibits 26, 27-37, and 41. It is **DENIED** as moot in all other respects.  It is further

ORDERED that defendants The Kind Group LLC and eos Products LLC's Unopposed Motion for Leave to File Replacement Copies of Exhibits [Docket No. 234] is **GRANTED**.

DATED July 28, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge