IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00170-PAB-KLM

ORALABS, INC., a Colorado Corporation,

Plaintiff

v.

THE KIND GROUP LLC, a New York Limited Liability Company, and
EOS PRODUCTS LLC, a New York Limited Liability Company,

Defendants.

---

## ORDER

---

This matter is before the Court on two motions to exclude expert opinions

pursuant to Fed. R. Civ. P. 702.  Plaintiff OraLabs, Inc. ("OraLabs") moves to exclude

defendants' expert Jeffrey Kapec [Docket No. 148] (public entry at Docket No. 155).[1]

Defendants move to exclude the opinions of plaintiff's expert Michael Thuma [Docket

No. 131] (Public Entries at Docket Nos. 132 and 150).

## I. BACKGROUND

Defendants the Kind Group LLC ("Kind Group") and eos Products LLC[2] assert

claims for patent and trade dress infringement related to OraLabs' manufacture of a lip

---

[1]OraLabs also moved to exclude the testimony of defendants' expert Cooper C.
Woodring on the issue of validity.  Docket No. 143.  The Court, however, granted
summary judgment in favor of defendants on the issue of validity.  OraLabs' motion to
exclude Mr. Woodring's testimony is therefore denied as moot.

[2]Defendant eos Products LLC is a wholly-owned subsidiary of Kind Group.
Docket No. 129 at 2, ¶ 4.  For ease of reference, defendants will be collectively referred
to as "Kind Group."

balm product.  Kind Group is the assignee of United States Patent No. D644,939 (the

"'939 Patent"), a design patent that covers the "ornamental design for the spherically-

shaped lip balm, as shown and described" in the following five figures:



Docket No. 182-1 at 4-6.

In 2009, the Kind Group began selling the eos Smooth Sphere (the "Smooth

Sphere"), an egg-shaped lip balm container similar in overall appearance to the design

of the '939 Patent.  Docket No. 176 at 2-3.  Additionally, Kind Group is the owner of a

United States Trademark Registration for the Smooth Sphere's trade dress.  *Id.* at 3.

The Smooth Sphere is depicted below:



Docket No. 149-1 at 24.

OraLabs is a manufacturer and distributor of cosmetic products.  Docket No. 1 at 2, ¶ 6.  OraLabs manufactures and distributes a lip balm product called the Chap-Ice Lip Revolution ("Lip Revo"), a lip balm that is sold in a brightly colored, spherical container with a screw-top lid.  *Id.*  The Lip Revo is depicted below:

 

Docket No. 176 at 4-5.

OraLabs filed this action on January 24, 2013, seeking a declaration that the *Lip Revo* does not infringe Kind Group's trade dress.  Docket No. 1 at 3-5, ¶¶ 13-27.  Kind Group asserted counterclaims for trade dress infringement and false designation of origin under the Lanham Act and common law trade dress infringement.  Docket No. 129 at 11-13, ¶¶ 50-64.

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area.  Rather, the Court must "perform[ ] a two-step analysis."  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the proffered opinions must be assessed for reliability.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).  To perform that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).  Where an expert witness relies on experience, the expert "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes).  When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for

4

cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597.  It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness' opinions must demonstrate that the process by which the witness derived his or her opinions is reliable.  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).  "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cnty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011); the proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

### III.  ANALYSIS

### A.  Jeffrey Kapec

OraLabs challenges four aspects of Mr. Kapec's expert report concerning the Lip Revo's infringement of the '939 Patent.[3]  The Court addresses each in turn.

#### 1.  Gestalt Theory

OraLabs challenges Mr. Kapec's opinion that the Lip Revo infringes the '939 Patent because, under gestalt theory, an ordinary observer would find that the Lip Revo and the '939 Patent give the same overall visual impression.  As explained by Mr. Kapec, gestalt theory teaches that the human mind is predisposed to view objects "as a whole entity rather than the individual parts that make up the shape."  Docket No. 149-1 at 18, ¶ 5.5.  Thus, according to Mr. Kapec, when presented with an incomplete image, even against a complex visual background, the brain will naturally complete the image by supplying the missing elements.  *Id*. at 18-19.  As relevant here, Mr. Kapec opines that, when perceiving the Lip Revo when its top is removed, the brain will view the flattened top of the lip balm and naturally complete the hemispherical shape that the product suggests.  *Id*. at 19, ¶ 5.6

OraLabs argues that Mr. Kapec is not a psychologist, as were the founders of gestalt theory, and is not qualified to opine on the issue of gestalt principles, that applying gestalt theory to the question of design patent infringement is improper, and that Mr. Kapec has provided no facts or data that support application of gestalt theory in

---

[3]Mr. Kapec also opines that the '939 Patent does not describe a functional design.  *See generally* Docket No. 149-1 at 4-16.  OraLabs does not challenge this opinion.

the present context.  *See* Docket No. 148 at 7-10.  Kind Group responds that Mr.

Kapec's background, which includes nine years of study in the field of three-

dimensional design and 42 years of experience designing and developing consumer

products, qualifies him to testify concerning the "dominant visual cognitive features" of

the designs in question.  Docket No. 166 at 7.  Kind Group also notes that OraLabs'

own expert conceded the legitimacy of gestalt theory.  *Id.* at 8.

Regarding Mr. Kapec's qualifications, the Court finds that, based on his more

than 40 years of experience in the field of industrial design and his experience teaching

three-dimensional design at the Pratt Institute, *see* Docket No. 149-1 at 34, Mr. Kapec

possesses sufficient specialized knowledge to testify concerning matters relating to

industrial design.  *Accord, e.g.*, *Poly-America, LP v. API Indus., Inc.*, --- F. Supp. 3d ----,

2014 WL 6687559, at *11 (D. Del. Nov. 25, 2014) (holding that "40 years of experience

in product packaging, some of it involving the design of [the product at issue]" met "the

liberal standard for 'specialized knowledge' under [Fed. R. Evid.] 702").  Mr. Kapec's

specialized knowledge includes testimony concerning his understanding of the

dominant visual features of a particular design and the bases for that understanding.

While it is true that Mr. Kapec admitted that he does not consider himself to be a gestalt

psychologist, Docket No. 167-1 at 11, p. 64:5, he does consider himself to be an expert

designer who can apply gestalt principles, id. at 64:17-18, and does utilize such

principles in his teaching, id. at 12, p. 65:3-7, and in his work.  *Id.* at 18, p. 93:2-17.

Thus, provided that Kind Group lays an adequate foundation for Mr. Kapec's knowledge

of gestalt theory as applied in the field of industrial design, Mr. Kapec is qualified to

discuss the theory in the context of the design of the accused product.

OraLabs argues that Mr. Kapec's opinion applying gestalt principles to the Lip Revo and the '939 Patent should be excluded because his report includes no facts or data that support the conclusion that the gestalt effect would cause ordinary consumers to "complete" the shape of the Lip Revo product.  Docket No. 148 at 9-10.  The Court agrees.  Mr. Kapec opines that gestalt principles lead to the conclusion that, when a consumer is presented with the Lip Revo, the ordinary observer will complete the hemisphere by rounding off the Lip Revo's flat product mound, thus creating an appearance substantially similar to the product mound of the '939 Patent.  Docket No. 149-1 at 19 ¶ 5.6.  In this regard, Mr. Kapec's testimony is not a statement of his views on the dominant features of the patented and accused designs, but rather an empirical conclusion presented as a scientific fact.  *See id.* ("Applying the principles of Gestalt . . . when a consumer is presented with the OraLabs Lip Revo lip balm . . . the mind's eye will 'complete' the shape of the hemisphere").  Mr. Kapec's conclusion lacks explanation or factual support.  This is insufficient.  There is no articulated reason why an ordinary observer would round off the Lip Revo's flattened product mound as opposed to, for instance, squaring it off like the cylindrical top of a stick lip balm product mound.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").  Importantly, Mr. Kapec acknowledged at his deposition that the success or failure of a design in suggesting a given form is capable of being tested in multiple ways.  Docket No. 167-1 at 18, 95:16-22 ("Consumer research is one method of verifying or measuring the . . . clarity of one form over perhaps another or the capture rate of one form over another.  But it is not

the only . . . method"). Mr. Kapec's report contains no mention of any testing that he performed to substantiate his opinion. In addition, to the extent that Mr. Kapec is relying upon his experience to form his opinion, he provides no explanation "how [his] experience leads to the conclusion [he] reached, why [his] experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Medina-Copete*, 757 F.3d at 1104.

Kind Group argues that Mr. Kapec's opinion is admissible because OraLabs' validity and infringement expert, Mr. Thuma, acknowledges that gestalt principles are valid and testified that he does not disagree with Mr. Kapec's application of gestalt principles as they relate to this case. *See* Docket No. 166 at 8; Docket No. 167-7 at 4, 258:23-259:21. Kind Group cites no authority, however, that would allow Mr. Thuma to bind OraLabs' litigation position. Moreover, the Court is not aware of any authority that holds that an otherwise unreliable expert opinion can be cured by the agreement of an opposing party's expert. Lastly, Kind Group provides no foundation or qualifications for Mr. Thuma to state reliable opinions regarding gestalt principles as applied to product design. The Court finds that Mr. Thuma's testimony regarding the application of gestalt principles to this case is irrelevant to the question of whether or not Mr. Kapec's opinion is admissible.

In sum, the Court finds that Mr. Kapec's conclusion that gestalt principles would cause an ordinary observer to complete the shape of the Lip Revo product mound and therefore regard its design as hemispherical fails *Daubert*'s reliability requirement.[4]

---

[4]Because the Court finds that Mr. Kapec's testimony is not reliably applied to the facts of this case, the Court need not address OraLabs' argument that gestalt theory is

## 2. Opinion Concerning Substantial Similarity

OraLabs challenges Mr. Kapec's opinion in paragraph 5.8 of his report that the Lip Revo is substantially similar to the design of the '939 Patent on three grounds: first, that Mr. Kapec considered only Figure 5 of the '939 Patent, which does not depict the indentation in the side wall; second, that Mr. Kapec did not consider the prosecution history of the '939 Patent; and third, that Mr. Kapec improperly used gestalt theory to inform his opinion.  *See* Docket No. 148 at 10-12.

OraLabs argues that Mr. Kapec applied an incorrect test for infringement when he used only figure 5 as the basis for his side-by-side comparison.  Docket No. 148 at 9-11.  As Kind Group notes, however, Mr. Kapec stated in his deposition that he took all of the figures of the '939 Patent into account in rendering his opinion.  Docket No. 167-1 at 8, 39:12-15.  Elsewhere in his deposition, Mr. Kapec stated that he believed that figure 5 was representative of "all dominant aspects of the patent" and that he did not consider the indentation to be a dominant portion of the design.  *See* Docket No. 149-4 at 19, 113:3-24.  As noted above, Mr. Kapec is qualified to present expert testimony concerning what he believes to be the dominant aspects of the accused and patented designs.  Mr. Kapec's decision to focus on figure 5 is not a basis for excluding paragraph 5.8 of his report.

Next, OraLabs argues that Mr. Kapec's conclusions are improper because he did not consider the prosecution history of the '939 Patent.  *See* Docket No. 148 at 11-12.  OraLabs' argument refers to its arguments concerning prosecution history in its motion

---

an improper method to evaluate design patents.

to exclude the testimony of defendants' expert Mr. Woodring. *See id.* (incorporating the arguments made in Docket No. 143 at 7-8).[5]  OraLabs argues that the prosecution history is relevant because Kind Group's original design was rejected by the examiner as obvious in light of the prior art until Kind Group filed an amendment to claim the flat edge and indentation in the rim of the base portion.  Docket No. 143 at 8.  In light of this history, according to OraLabs, "it is likely that the flat edge and depression along the rim of the base portion was significant in gaining allowance of the '939 Patent and is the feature that distinguishes the '939 Patent from being substantially similar to the [prior art reference]."  *Id.*  OraLabs' characterization of the prosecution history is not supported.  The patent examiner found that Kind Group's original design in the application that became the '939 Patent was obvious in light of prior art.  *See* Docket No. 144-5 at 11.  That original design, however, included only the hemispherical lip balm applicator.  It did not claim the base.  *See id.*  Kind Group subsequently amended the application to include the hemispherical base portion of the '939 Patent.  *See id.* at 21.  The patent examiner did not reject the amended application, but noted an inconsistency between figure one, a side view that included the flat edge and the indentation, and figure two, an aerial view that omitted the indentation and flat edge. *See id.*  The examiner allowed the claim, *id.* at 20, but required a correction to the figures for consistency.  *Id.* at 21.  In requiring the corrected figures, the examiner made

---

[5]Mr. Woodring's testimony relates to the validity of the '939 Patent. *See generally* Docket No. 144-1.  In light of the Court's order granting summary judgment in favor of Kind Group on the issue of validity, that motion is moot.  Nevertheless, the Court will consider OraLabs' prosecution history argument as raised in its motion to exclude Mr. Woodring's testimony as if OraLabs had raised this argument in the present motion.

no mention of the prior art reference that he believed invalidated Kind Group's original application to patent only the hemispherical lip balm shape. *See id.* There is no support in the prosecution history for OraLabs' statement that the examiner considered the flat edge to be the key feature that made the '939 Patent's design patentable and no evidence that Kind Group's patent application would have been denied had the design omitted this feature. Accordingly, the Court finds that Mr. Kapec's decision not to consider the '939 Patent's prosecution history does not justify excluding his opinions regarding substantial similarity.

Finally, OraLabs argues that paragraph 5.8 should be excluded because Mr. Kapec improperly applied gestalt theory. Kind Group responds that, in paragraph 5.4 of his report, Mr. Kapec states his ultimate conclusion regarding infringement "without any reference to Gestalt principles." Docket No. 166. The Court agrees with OraLabs. While Kind Group correctly identifies a paragraph in Mr. Kapec's report that does not mention gestalt theory, Mr. Kapec's report does not describe any alternate methodology that he used to reach his ultimate conclusion, and Mr. Kapec's report provides no reason to believe that gestalt theory was not an integral part of his analysis. Indeed, the paragraph cited by Kind Group, paragraph 5.4, merely introduces Mr. Kapec's ultimate conclusions. *See* Docket No. 149-1 at 17, ¶ 5.4. In the following paragraph, Mr. Kapec introduces gestalt theory, *id.* at 17-18, ¶ 5.5, and in the three paragraphs that follow, Mr. Kapec explains that gestalt theory is the basis for his ultimate conclusion that an ordinary observer would believe that the Lip Revo is substantially the same as the '939 Patent. *Id.* at 19-20, ¶¶ 5.6-5.8. Because Mr. Kapec did not perform any testing to support his opinion that gestalt theory leads to the conclusion that the Lip Revo

12

infringes the '939 Patent or otherwise explain how his experience supports his opinion, his opinion concerning substantial similarity will be excluded.

### 3. Use of Interchangeable Lid in Infringement Opinion

OraLabs seeks to exclude Mr. Kapec's testimony that the fact that the Smooth Sphere's lid is capable of being screwed into the Lip Revo base further supports his conclusion that the Lip Revo infringes the '939 Patent on the grounds that the design claimed in the '939 Patent does not include a lid.  Docket No. 148 at 12.  OraLabs further argues that Mr. Kapec's comparison of the Lip Revo and the Smooth Sphere was improper because the test for infringement is whether an accused design is substantially similar to a patented design, not to the commercial embodiment of that design.  *Id.*  Kind Group responds that Mr. Kapec's comparison of the Lip Revo and the Smooth Sphere was permissible because the ordinary observer test requires consideration of the overall shape of the designs.  *See* Docket No. 166 at 13.  The Court agrees with OraLabs.

"When no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the patented design with the accused devices."  *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988).  It is impermissible, however, to use limitations that appear in a commercial embodiment to alter the scope of the claimed design.  *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993) (holding that a district court erred in holding that patentee did not demonstrate a likelihood of success on the merits based on the absence of features in

the commercial embodiment that were not claimed in the patent); *see also Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1197 (Fed. Cir. 1995), *vacated on other grounds by Egyptian Goddess*, 543 F.3d 665 (infringement is measured "against the claim, not against a commercial embodiment that contains more than the claim").

The Federal Circuit's opinion in *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452 (Fed. Cir. 1997), is instructive.  In *Berry*, the district court granted summary judgment and invalidated a design patent for a beverage container on the grounds that the design was functional.  *Id.* at 1455.  In finding functionality, the district court stated that the container was "designed so that the cup was able to fit underneath the valve of a soda fountain and so that it could hold 32 ounces while retaining stability to minimize the danger of spilling."  *Id.*  The Federal Circuit reversed, noting that the features that the district court relied on to invalidate the patent were found only in the commercial embodiment and that there were "no height or volume limitations, no requirements that the container fit in the majority of car cup holders, and no stability limitations imposed" by the patent at issue.  *Id.*

Here, Mr. Kapec's side-by-side comparison of the Lip Revo and the Smooth Sphere compares the measurements of the outside diameter, overall length, lip balm diameter, height, and base diameter of the Lip Revo and the Smooth Sphere.  *See* Docket No. 149-1 at 23-24.  Mr. Kapec then affixed the Smooth Sphere's lid onto a Lip Revo base to "further support[]" that an ordinary observer would find the two designs substantially similar.  *Id.* at 24.  Mr. Kapec's analysis relies on the dimensions of the respective products.  The figures that comprise the claimed design of the '939 Patent,

14

however, like the patent in *Berry*, contain no limitations related to the dimensions of any portion of the design.  Mr. Kapec's opinion, which relies on limitations that are found only in the commercial embodiment and not in the patent itself, is improper.  Kind Group argues that Mr. Kapec's use of the lid is proper because the ordinary observer test requires "consideration of the overall shape."  Docket No. 166 at 13.  Had Mr. Kapec limited his analysis to the shape of the two products, it is possible that his use of the Smooth Sphere as a commercial embodiment of the '939 Patent would be permissible.  But Mr. Kapec's testimony does not concern the shape or relative ratio of different components of the design, each of which is arguably claimed in the figures of the '939 Patent.  His testimony relies entirely on the size of the two products, which is impermissible.  This testimony will be excluded.

### 4. Comparison to Prior Art

OraLabs seeks to exclude Mr. Kapec's testimony that neither the Lip Revo nor the Smooth Sphere is similar in design to several prior art references.   OraLabs argues that Mr. Kapec impermissibly uses gestalt theory, relies only on figure 5, and provides no facts or data to support his conclusion that the prior art references are plainly dissimilar.  Docket No. 148 at 13.  The Court agrees.  As discussed above, Mr. Kapec's opinion applying gestalt principles to the facts of this case is not reliable expert testimony.  Mr. Kapec's opinion concerning prior art, like his opinion comparing the Lip Revo to the '939 Patent, relies on his "experience in industrial design and studying and applying the Gestalt principles of consumer perception."  Docket No. 149-1 at 20.  Mr. Kapec's failure to support his opinion with facts or data or sufficiently explain how he arrived at his opinions by applying his experience with gestalt principles makes his

opinions unreliable.

### B.  Michael Thuma

Mr. Thuma submitted an expert report on the '939 Patent's validity, *see* Docket No. 133-1, and a rebuttal report to Mr. Kapec's report that addressed the issue of infringement.  *See* Docket No. 133-2.  In light of the Court's ruling on Kind Group's motion for partial summary judgment, *see* Docket No. 378, the Court need only consider the issue of infringement, which is addressed in Mr. Thuma's rebuttal report.  *Accord*, Docket No. 380 at 3.

Kind Group argues that Mr. Thuma's infringement opinions improperly rely on a verbal construction of the '939 Patent and that Mr. Thuma improperly based his decision that the Lip Revo does not infringe the '939 Patent on the "point of novelty" test, which the Federal Circuit has rejected.  *See* Docket No. 131 at 8-10.

The "point of novelty" test stems from the Federal Circuit's decision in *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423 (Fed. Cir. 1984).  The point of novelty test required that "no matter how similar two items look, the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." *Litton Sys.,* 728 F.2d at 1444 (citation omitted).  Following *Litton*, the Federal Circuit in a number of cases required plaintiffs in design patent infringement actions to satisfy both the ordinary observer test and the point of novelty test to prove infringement.  *See, e.g.*, *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1383 (Fed. Cir. 2004).  In *Egyptian Goddess*, the Federal Circuit abandoned the point of novelty test as a "second and free-standing requirement for proof of design patent infringement" and

16

instead concluded that the proper test for design patent infringement is whether an ordinary observer, viewing the accused design in the context of the prior art, would consider the accused and patented designs to be substantially similar.  543 F.3d at 664, 666.  The *Egyptian Goddess* court noted that this modified version of the ordinary observer test avoided the risks of the jury focusing on "whether the accused design has appropriated a single specified feature of the claimed design, rather than on the appropriate inquiry, i.e., whether the accused design has appropriated the claimed design as a whole."  *Id.* at 677.

In a separate portion of the opinion, the *Egyptian Goddess* court cautioned against the use of verbal claim constructions in design patent cases.  *Id.* at 679-80.  Although verbal claim constructions are not forbidden, the court noted the risks "entailed in such a description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole."  *Id.* at 680.  The Court, following *Egyptian Goddess*, has held that no verbal claim construction is necessary in this case.  *See* Docket No. 101.

In his rebuttal report, Mr. Thuma stated that "[t]he scope of the claim of the '939 Patent, taken as a whole, . . . includes three elements: the hemi-spherical top, the flat portion along the rim or edge of the front surface of the base portion, and the hemi-spherical base portion."  Docket No. 133-2 at 16.  Mr. Thuma also opines that, based on the '939 Patent's prosecution history, the indentation on the side wall is a "necessary part of the design claimed in the '939 Patent."  *Id.* at 6-7.  Based on his understanding

of the three elements that constitute the scope of the '939 Patent, Mr. Thuma then stated that he applied the "ordinary observer" test, and opined that there are significant differences between the figures of the '939 Patent, including the Lip Revo's flat-topped (as opposed to hemispherical) lip balm, the absence of the depression, and three "s" shaped curves on the wall of the Lip Revo that do not appear in the Smooth Sphere. *Id.* Given those significant differences, Mr. Thuma opined that an ordinary observer comparing the Lip Revo to the '939 Patent in light of the prior art would conclude that the designs are not substantially the same. *Id.*

The Court finds that Mr. Thuma's infringement opinion applies an incorrect legal standard to the issue of design patent infringement and therefore would not be helpful to the jury. Mr. Thuma provided an explanation of the proper test for design patent infringement (the "ordinary observer" test), but, when applying that test to the Lip Revo, he appears to focus exclusively on individual features. *See* Docket No. 133-2 at 16. Mr. Thuma's infringement opinion consists of a single paragraph and is based on the absence of specific features – namely, the flat top of the lip balm, the lack of an indentation on the side wall of the base, and the three "s" shaped curves. *Id.* Mr. Thuma does not articulate any basis for his opinion that the Lip Revo is sufficiently distinct from the '939 Patent other than by describing the differences between individual features of the designs based on his verbal construction of the patent. *See* Docket No. 133-2 at 16. Mr. Thuma does not identify a portion of the respective designs as a dominant design element or provide a reason why, in his expert opinion, an ordinary observer would believe the differences to be significantly distinguishing. Focusing on specific features at the expense of the design as a whole is the precise risk that

18

*Egyptian Goddess* warned against when it abandoned the point of novelty test and cautioned against the use of verbal constructions.  While Mr. Thuma pays lip service to the ordinary observer test, it is at best ambiguous whether Mr. Thuma's opinion in his rebuttal report was based on comparing the accused and patented designs as a whole or on an improper reduction of the '939 Patent's drawings to a verbal description.

While his rebuttal report may be ambiguous on the question of whether he applies the ordinary observer test properly, Mr. Thuma's deposition testimony confirms that his opinion regarding infringement is based on an improper methodology for analyzing design patents.  Mr. Thuma testified that, based on the prosecution history of the '939 Patent, the "new and unique element" that allowed the '939 Patent to issue was the indentation in the side wall.  Docket No. 134 at 6, 225:15-23.  Mr. Thuma then testified that it was his understanding that any accused design would have to incorporate the feature that distinguished the '939 Patent from the prior art in order to infringe.  *Id.* at 7, 226:3-6, 18-22.  This testimony renders Mr. Thuma's opinion problematic in two ways.  First, as discussed above with respect to OraLabs' challenge to Mr. Kapec's opinion, there is no support in the prosecution history for Mr. Thuma's contention that the depression in the side wall was the key to patentability.  Docket No. 133-4 at 5, 78:21-24 (acknowledging that the prosecution history "nowhere lists" the three elements Mr. Thuma identified as comprising the '939 Patent's scope "as the [elements] that restricted the scope" of the patent).   Second, Mr. Thuma's testimony confirms that his infringement opinion is based on the incorrect assumption that an accused design cannot be infringing if it does not incorporate a single feature that can

be characterized as a "point of novelty" from the prior art.[6]

Mr. Thuma's testimony regarding his written description of the '939 Patent further underscores that his methodology was based on an incorrect understanding of the test for design patent infringement.  At the deposition, Kind Group's attorneys presented Mr. Thuma with images of two designs (alongside Figure 3 from the '939 Patent), each of which contained all of the elements present in Mr. Thuma's written description of the '939 Patent:[7]



Fig. 3 ('939 Patent)   |   Hypothetical Designs Tracking Thuma's Verbal Construction

Docket No. 131 at 9; *see also* Docket No. 133-5 at 2, Docket No. 133-6 at 2

---

[6]*See* Docket No. 134 at 7, 226:3-6 ("Q.  Is it your opinion that the accused design would have to incorporate that allegedly distinguishing feature to be infringing?  A. Yes."); 226:18-22 ("Q.  Okay.  Your understanding is that the accused design has to incorporate the distinguishing feature to be infringing? . . . A.  Yes").

[7]For ease of reference, the Court will refer to the alternative design that appears immediately to the right of the '939 Patent in the image above as the "first alternative design," and the design that appears on the far right of the image as the "second alternative design."

Mr. Thuma testified that, because the designs had "three of the basic elements of what is shown in Figure 3" of the '939 Patent (the hemispherical base, side depression, and hemispherical lip balm), both alternate designs were "basically the same" as the design claimed in the '939 Patent:

> Q. . . . Do [the first alternative design and the '939 Patent] have the same overall visual appearance to you?
>
> A.  [The first alternative design] has a hemispherical base . . . .  It does have a depression on the side. . . .  And it does have a hemispherical lip balm or upper surface.  So it has three of the basic elements of what is shown in Figure 3 [of the '939 Patent].
> . . . .
>
> Q. . . . Does the [first alternative design] have the same overall visual appearance as the design of the '939?
> A.  Yes.

Docket No. 133-4 at 7-8, 185:4-14, 185:23-186:2.

> Q. . . .  are you saying that the [second alternative design ] has the same overall visual appearance as that of the '939?
>
> A.  Yes, because following the same logic as we just discussed with [the first alternative design], this would have the same overall general appearance as Figure 3, the '939 patent.
>
> Q.  Is it your testimony that the [second alternative design] is basically the same as that of the '939?
>
> A.  Yes.

*Id.* at 8, 187:20-188:8.  Docket No. 133-4 at 7, 185:11-14, 8, 186:9-13, 187:20-188:8.

Mr. Thuma's testimony, which relies on the "basic elements" of the respective designs rather than their overall visual impression, confirms that his opinion that the Lip Revo does not infringe the '939 Patent uses an improper standard for determining whether an accused and patented design are substantially the same in the eyes of an ordinary

observer.

In sum, the Court finds that, because Mr. Thuma's opinion concerning infringement relies on select features and not the overall visual impression of the patented and accused designs, his opinion is unreliable and will be excluded.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff OraLabs, Inc.'s Motion in Limine to Exclude Testimony of Jeffrey Kapec [Docket No. 148] (public entry at Docket No. 155) is **GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that defendants The Kind Group LLC and eos Products LLC's Motion to Exclude Opinions of Plaintiff's Expert Michael C. Thuma [Docket No. 131] (Public Entries at Docket Nos. 132 and 150) is **GRANTED** to the extent that it seeks to exclude Mr. Thuma's opinion that the Lip Revo does not infringe United States Patent No. D644,939.  It is **DENIED** as moot with respect to Mr. Thuma's opinions concerning the validity of United States Patent No. D644,939.  It is further

**ORDERED** that plaintiff OraLabs, Inc.'s Motion in Limine to Exclude Testimony of Cooper C. Woodring [Docket No. 143] is **DENIED** as moot.

DATED August 7, 2015.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

22