IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00170-PAB-KLM

ORALABS, INC., a Colorado Corporation,

    Plaintiff,　　　　　　　　　　　　　　**RESTRICTED - LEVEL ONE**

v.

THE KIND GROUP LLC, a New York Limited Liability Company, and
EOS PRODUCTS LLC, a New York Limited Liability Company,

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Motions in Limine [Docket Nos. 319 and 320] filed by plaintiff OraLabs, Inc. ("OraLabs") and by defendants The Kind Group LLC and eos Products, LLC [Docket Nos. 327, 329, 333, 335, 339, and 341].[1] The relevant background is described in detail in other orders in this matter, *see* Docket No. 378, and will not be recited here.

**I. ANALYSIS**[2]

Evidence is relevant if "it has any tendency to make a fact more or less probable

---

[1] Defendant eos Products LLC is a wholly-owned subsidiary of Kind Group. Docket No. 129 at 2, ¶ 4. For ease of reference, defendants will be collectively referred to as "Kind Group."

[2] As a preliminary matter, the Court notes that, at the Trial Preparation Conference in this matter, the parties agreed that Kind Group's Motion in Limine No. 6 to Preclude Evidence and Testimony Regarding Legal Theories that have been Waived or Mooted [Docket No. 341] is moot in light of the Court's Order on the parties' respective motions for summary judgment (Docket No. 378) and the Court's Order granting Kind Group's Motion for Notice and Hearing to Correct Inventorship (Docket No. 386). Docket No. 341 will therefore be denied as moot.

than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Federal Rule of Evidence 403 permits courts to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### A. Subsequently-Issued Design Patent

Kind Group's first motion in limine seeks to exclude evidence regarding United States Design Patent No. D681,278 ("the '278 Patent"), a design patent owned by OraLabs that claims the bottom and top portions of a lip balm container and the lip balm itself. *See* Docket No. 327.[3] Kind Group argues that the '278 Patent is irrelevant to both Kind Group's trade dress and design patent claims, *id.* at 2-4, 5-7, and that admitting evidence of the '278 Patent would confuse and mislead the jury. *Id.* at 7-9. OraLabs responds that evidence of separate patentability is relevant and admissible so long as the issued patents bear a relationship with the accused product, Docket No. 363 at 2, and that the '278 Patent is probative of patent infringement. *Id.* at 3-4. OraLabs acknowledges that "the existence of a design patent is not probative of whether a likelihood of confusion exists," *id.* at 6, so the only issue for the Court to

---

[3] Although neither party attaches the '278 Patent, the Court takes judicial notice of the patent and the figures that describe the patent's scope. *See St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 154 n.4 (E.D.N.Y. 2010) (taking judicial notice of "patents' issuance and contents under Federal Rule of Evidence 201 because the patents are documents issued by the PTO, and are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned") (citation omitted).

resolve is whether the '278 Patent is probative of the issue of design patent infringement and, if so, whether its probative value is substantially outweighed by the danger of unfair prejudicial effect.

"Improvements or modifications may indeed be separately patentable if the requirements of patentability are met, yet the device may or may not avoid infringement of the prior patent. . . . Whether a modified device is within the scope of the prior patent . . . depends on the particular facts." *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1191-92 (Fed. Cir. 1996).

OraLabs argues that, because the Lip Revo is the commercial embodiment of the '278 Patent, the patent is "directly related to the issue of infringement in this case," Docket No. 363 at 3, and that the jury may conclude that the examiner issued the '278 Patent "for reasons that weigh in favor of finding that the Lip Revo product is not substantially the same as the '939 Patent." *Id.* at 4.

The Court finds that, because the '278 Patent claims substantially different scope than the '939 Patent, the '278 Patent is not relevant to whether the Lip Revo infringes the '939 Patent. *See Decade Indus. v. Wood Tech., Inc.*, 100 F. Supp. 2d 979, 982 (D. Minn. 2000) (declining to give weight to subsequently issued patent because "it is axiomatic" that infringement is determined "by comparing the allegedly infringing product, not the alleged infringer's patent, to the claimed design"). OraLabs states that the patent examiner "effectively declared that the design of the '278 Patent is not anticipated by or obvious in view of the '939 Patent" and notes that the '939 Patent is listed on the face of the '278 Patent. Docket No. 363 at 4 & n.1. The '278 Patent, however, contains an element that is not present in the '939 Patent; namely, the '278

Patent includes the top portion of the lip balm container. The top portion is a prominent feature of the '278 Patent and appears in seven of the ten figures that define the patent's scope. *See* '278 Patent Figures 1, 3-8. Only two figures, Figures 9 and 10, show the '278 Patent in views that are comparable to the scope of the '939 Patent. Because of the presence of this additional element, OraLabs has failed to show that the examiner could not have issued the '278 Patent even if she believed that the product mound and hemispherical base, considered in isolation, infringed the '939 Patent.

    The file history of the '939 Patent demonstrates why the issuance of the '278 Patent has no probative value to the issue of patent infringement. As noted by OraLabs in several filings in this action, when Kind Group first filed the application that became the '939 Patent, Kind Group initially only sought protection for the product mound portion of the lip balm container and the examiner rejected the application as anticipated by three prior art designs. *See* Docket No. 110 at 3; Docket No. 107-1 at 5. Kind Group then amended the application to include the bottom part of the lip balm container in addition to the product mound. Docket No. 110 at 4. The examiner accepted this modification, even though Kind Group made no alteration to the shape of the product mound. Docket No. 110 at 4; Docket No. 107-4 at 6, 7. Thus, even though the patent examiner in the case of the '939 Patent unequivocally expressed the opinion that the product mound was anticipated by the prior art, the examiner allowed a subsequent application that contained the very same element that, considered in isolation, would not have been patentable. As Kind Group notes, where patent 1 contains elements A, B, and C, and patent 2 claims elements A, B, C, and D, the commercial embodiment of patent 2 still infringes patent 1, even though the invention is separately patentable.

*Atlas Powder Co. v. E.I. du Pont de Nemours & Co.*, 750 F.2d 1569, 1580 (Fed. Cir. 1984) ("A patent is not the grant of a right to make or use or sell.  It does not, directly or indirectly, imply any such right.  It grants only the right to exclude others.").  The '278 Patent, like the '939 Patent, contains an element that is not found in the relevant prior art references.  Because the '278 Patent could have issued whether or not the examiner believed that the base portion and product mound in the '278 Patent were anticipated by the '939 Patent, OraLabs will not be permitted to introduce the '278 Patent as evidence of non-infringement.

### B.  Third-Party Statements Evidencing Actual Confusion

The Court considers OraLabs' first Motion in Limine and Kind Group's second Motion in Limine together, as they relate to the same evidentiary dispute.  OraLabs seeks to exclude evidence related to actual confusion based on social media postings, including Twitter posts.  *See* Docket No. 319.  Kind Group affirmatively moves the admission of that same evidence.  *See* Docket No. 329.

The disputed evidence falls into three categories: (1) Twitter posts from fans of musician Miley Cyrus that mistakenly identify Lip Revo products given out by Ms. Cyrus to concert-goers as eos products, *see* Docket Nos. 330-1-330-9; (2) a series of Twitter posts that reflect certain consumers' mistaken belief that a green, watermelon-flavored Lip Revo was made by eos (eos has never made a watermelon-flavored Smooth Sphere); *see* Docket Nos. 330-10-330-19; and (3) two emails to Kind Group – one from an employee of Walgreens and one from a consumer – asking questions about Lip Revo.  Docket Nos. 331-1, 331-2.

OraLabs argues that the social media statements are inadmissible hearsay and

do not qualify for any exception. Docket No. 361 at 2-3. The Court disagrees. Courts have held that testimony that describes incidents of actual consumer confusion is not offered for the truth of the matter asserted. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir. 2001) (testimony from parents relating their children's statements that confused "Duffy the Dragon" costume with the popular Barney the Dinosaur character was not offered to prove the truth of the matter asserted); *see also Sinhdarella, Inc. v. Vu*, 2008 WL 410246, at *4 (N.D. Cal. Feb. 12, 2008) (employee declarations detailing statements that reflected confusion between the parties' restaurants were not offered for the truth of the matter asserted). The Twitter posts that Kind Group seeks to admit are even more direct than accounts of third-party statements. Kind Group provides the statements themselves. These statements are not hearsay and are properly considered as evidence of actual confusion.

OraLabs argues that, even if they are not hearsay or fall within an exception to the hearsay rule, the Twitter posts' prejudicial effect outweighs their probative value because the posts do not indicate the cause of their authors' confusion. Docket No. 361 at 3. With regard to the Miley Cyrus posts, OraLabs states that Ms. Cyrus is an "influencer" for eos and posts photos on social media, where she is depicted using the Smooth Sphere, and that her status as an "influencer" might have been the source of the authors' confusion. Docket No. 361 at 4. OraLabs cites an email from a Kind Group employee that notes that "the consumer confusion is high given our association with Miley." Docket No. 362-3 at 1. The Court finds that the prejudicial effect of this category of posts does not substantially outweigh their probative value. A reasonable jury could conclude, based on the Miley Cyrus posts, that consumers were confused

because of the similarities between the Lip Revo and Smooth Sphere trade dress. OraLabs is free to argue alternate explanations for consumer confusion at trial.

With regard to the watermelon eos category of posts, OraLabs states that it is unclear whether the authors of the posts were confused by the trade dress. OraLabs notes that in one exhibit, the author references Chapstick. Docket No. 361 at 6 (referencing Docket No. 330-11). OraLabs also suggests that, in another post that contains a photograph that depicts several items (including a watermelon Lip Revo), a poster who replied, "dark green eos lip balm?!," may have been referring to what appears to be a dark green "stick" shaped lip balm container that appears in the photograph. Docket No. 361 at 6. The Court finds that the collection of posts concerning the watermelon Lip Revo does not have a prejudicial effect that substantially outweighs its probative value. As with the Miley Cyrus posts, a finder of fact could reasonably conclude that these posts evidence actual confusion because of the Lip Revo and Smooth Sphere's trade dress.

OraLabs argues that two of Kind Group's exhibits, exhibits 14 and 15 to the declaration of Tracy A. Stitt ("Stitt declaration"), do not evidence actual confusion. Docket No. 361 at 6-7. The Court agrees. In those exhibits, the consumers indicate that they understand that the green Lip Revo was not made by eos. *See* Docket Nos. 330-14, 330-15. These posts are not admissible, as they do not evidence actual confusion on the part of consumers and therefore have no tendency to make a material fact more or less probable.

Regarding the emails, OraLabs again argues that there is no evidence that the products' trade dress was the cause of any confusion. With regards to the Walgreens

email, OraLabs states that the email shows only that Walgreens employees were confused by the Lip Revo's shipping case label and is not evidence of confusion caused by the Lip Revo's trade dress. Docket No. 361 at 8. The Court disagrees. In the email, a Walgreens employee contacts Kind Group to discuss a problem related to a shipment of Lip Revo products. *See* Docket No. 331-1 at 4. A jury could reasonably conclude that the basis for the confusion was the visual similarities between the products. The Court reaches the same conclusion with respect to Exhibit 21, an email from a consumer regarding a "sugar cookie lip balm" – a product made only by OraLabs. The consumer in this email states that, after the Kind Group representative informed her that Kind Group had never made a "sugar cookie lip balm," she "examined the container and it is a brand called REVO. I have been deceived." Docket No. 331-2 at 3. A jury could reasonably conclude that the reason that this consumer was confused was the similarities between the products' trade dress.

In sum, the court will grant in part Kind Group's second motion in limine and grant in part OraLabs' first motion in limine. Exhibits 1-13 and 16-21 of the Stitt declaration are admissible. Exhibits 14-15 are not admissible.

### C. Prosecution History

Kind Group's third motion in limine seeks an order precluding OraLabs from presenting evidence and testimony about the prosecution history of the '939 Patent. *See* Docket No. 333. Kind Group argues that OraLabs seeks to use the prosecution history for two improper purposes: claim construction and prosecution history estoppel, both of which are matters of law. *Id.* at 1. OraLabs responds that the prosecution history is important because Kind Group's infringement analysis has focused on Figure

5 of the '939 Patent, which does not depict the indentation and flat edge along the side of the base.  Docket No. 347 at 3.

In previous filings in this action, OraLabs has argued that the prosecution history is relevant because Kind Group's original design was rejected by the examiner as obvious in light of the prior art until Kind Group filed an amendment to claim the flat edge and indentation in the rim of the base portion.  Docket No. 143 at 8.  In light of this history, according to OraLabs, "it is likely that the flat edge and depression along the rim of the base portion was significant in gaining allowance of the '939 Patent and is the feature that distinguishes the '939 Patent from being substantially similar to the [prior art reference]."  *Id.*  OraLabs has also stated that the prosecution history means that Kind Group has "surrender[ed]" patent protection for "a completely spherical bottom portion" for "reasons related to patentability."  Docket No. 286 at 4.  Although OraLabs does not repeat this argument in response to Kind Group's motions in limine, the Court will evaluate the argument, as this appears to be the argument with which Kind Group is principally concerned.  *See* Docket No. 333 at 1 (noting that OraLabs seeks to use the prosecution history for the "improper purpose of arguing claim construction and prosecution history estoppel").

For the same reasons noted in the Court's ruling on OraLabs' motion in limine regarding the testimony of Kind Group's expert Jeffrey Kapec, *see* Docket No. 393 at 10-12, the Court finds that OraLabs misinterprets the prosecution history.  The Court finds, however, that it is improper to exclude all references to prosecution history.  OraLabs may use the prosecution history of the '939 Patent for the purpose of demonstrating that the flat edge and indentation in the rim of the base portion are part of

the claimed design. The test for design patent infringement is whether "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). The relevant inquiry is limited to "similarities in the overall design, not . . . similarities in ornamental features considered in isolation." *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006). OraLabs may not, therefore, use the prosecution history to argue that Kind Group disclaimed the right to exclude a lip balm container with a perfectly circular edge. Such an argument would be inconsistent with the "ordinary observer" test, since an ordinary observer may look past differences in individual features and conclude that the overall designs are substantially the same. Nor may OraLabs suggest to the jury that the patent examiner considered the flat edge to be a dominant visual feature of the '939 Patent's design or that the flat edge was the key factor that distinguished the '939 Patent from the prior art. The relevant inquiry for design patent infringement is what an ordinary observer would believe when presented with the relevant designs, not whether the patent examiner considered any particular element to be an important visual feature of the claimed design. Accordingly, Kind Group's motion in limine is granted in part and denied in part.

### D. Bartning Testimony

Kind Group's fourth motion in limine seeks to exclude portions of the testimony of Mr. Bion Bartning on the grounds that Mr. Bartning, a lay witness, offers testimony that should be considered expert opinion pursuant to Fed. R. Evid. 702. Docket No. 335. At his deposition, Mr. Bartning, a former Kind Group employee at the time Kind Group

developed the Smooth Sphere, stated that certain features of the Smooth Sphere were "obvious" design alterations to one of the prior art references that OraLabs claimed rendered the '939 Patent invalid. See Docket No. 336-1 at 5-7, 48:19-49:6; 55:2-56:18. OraLabs responds that Mr. Bartning did not offer opinion testimony, but was "simply recalling his experience with Kind Group in developing the eos SMOOTH SPHERE lip balm." Docket No. 345 at 5.

In light of the Court's ruling granting Kind Group's motion for partial summary judgment, Docket No. 378, this issue appears to be moot. Mr. Bartning's testimony may have been considered expert opinion to the extent that there existed a factual dispute concerning the obviousness of the '939 Patent, but that issue was resolved on summary judgment. Kind Group's motion to exclude the testimony of Mr. Bartning identified on page five of its motion is denied as moot.

### E. Testimony Concerning Revised Costs

Kind Group's fifth motion in limine seeks to preclude Gary Schlatter, OraLabs' CEO and Rule 30(b)(6) designee on the issue of profits, from testifying to certain alleged variable costs that OraLabs seeks to exclude from its profit calculation on the grounds that such testimony would contradict Mr. Schlatter's testimony at his Rule 30(b)(6) deposition. See Docket No. 339.

At his deposition, Mr. Schlatter discussed a one-page document titled "Revo Ball Detailed Gross Profit Statement by Month." See Docket No. 139-1 at 5, 50:7-12, 22-25. Kind Group states that this is the only information that OraLabs produced to Kind Group before Mr. Schlatter's deposition that was responsive to a Request for Production that sought "documents demonstrating profits, losses and any costs attributable to the Lip

11

Revo product." *See* Docket No. 136 at 2.  The profit statement describes the gross revenues that OraLabs received from the Lip Revo as well as costs that OraLabs attributed to the Lip Revo from July 30, 2013 to March 31, 2014, and states that the net profit from the Lip Revo during that time was ███████.  *See* Docket No. 139-2 at 4.  At the deposition, Kind Group asked Mr. Schlatter how OraLabs calculated the ███████ figure, and Mr. Schlatter responded that the number included "general administrative costs which would include management, building costs, administrative staff, engineering, research and development, quality," and "everything that's not included in our cost of goods sold."  Docket No. 139-1 at 6, 54:9-14.  OraLabs allocated those overhead costs to the Lip Revo based on the proportion of OraLabs' total revenues attributable to the Lip Revo.  *Id.*, 54:6-9.  Mr. Schlatter testified that costs including rent, management, maintenance, quality, research and development, and engineering are fixed costs that do not vary with sales revenue.  *Id.* at 9, 80:2-11.  When asked which categories of costs would have been lower if OraLabs had made fewer sales of the Lip Revo, Mr. Schlatter responded that the "variable costs," which included "[c]osts of goods sold" would have been lower, but when asked to identify any other category of costs that varied with the number of Lip Revo products sold, Mr. Schlatter responded that "[o]verhead's fixed."  *Id.* at 10, 84:4-12.  Mr. Schlatter indicated that his answer was complete.  *Id.* 84:13-14 ("Q.  Any others?  That's it?  A.  Yes.").

Kind Group seeks to preclude Mr. Schlatter from offering testimony at trial that would contradict his statement as OraLabs' Rule 30(b)(6) designee that all overhead

costs are fixed. Docket No. 339 at 3.[4] Kind Group states that Mr. Schlatter cannot contradict the testimony of the company represented by the Rule 30(b)(6) deposition. *Id.* at 4 (citing *Mitchael v. Intracorp., Inc.,* 179 F.3d 847 (10th Cir. 1999); *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874 (10th Cir. 1997)). OraLabs responds that Kind Group did not question Mr. Schlatter as to specific overhead variable costs, *see* Docket No. 365 at 3, and that Kind Group will have the opportunity to challenge Mr. Schlatter's testimony at trial during cross-examination. *Id.* at 4.

The Court finds that, although Mr. Schlatter's contemplated testimony appears to be in direct contradiction to the clear testimony he provided as OraLabs' Rule 30(b)(6) designee, exclusion of his testimony is too severe. This is not a case where Kind Group does not know what Mr. Schlatter's testimony will be. The Court does not find that Mr. Schlatter's Rule 30(b)(6) testimony has the effect of binding OraLabs such that a different witness (Mr. Schlatter in his personal capacity at trial) should be prohibited from contradicting it. "[T]he testimony of the representative designated [under Rule 30(b)(6)] to speak for the corporation are admissible against it. But as with any other party statement, they are not "binding" in the sense that the corporate party is forbidden

---

[4] Although not mentioned in Kind Group's motion, OraLabs' damages expert, Brett Reed, opined that, based on information provided to him by Mr. Schlatter, several categories of costs that were included in "overhead" are variable costs that should be deducted from any profit attributable to the Lip Revo for the purpose of computing damages. *See* Docket No. 139-6 at 12-16. In his rebuttal to the report of Kind Group's expert David Hall Mr. Reed stated that, while Mr. Hall may not have had certain details about OraLabs' costs, he understood that Mr. Schlatter will testify at trial concerning incremental costs associated with the Lip Revo that Mr. Hall excluded as fixed expenses. *Id.* at 12. At his deposition, when questioned about the data underlying his estimates of OraLabs' variable costs attributable to the Lip Revo, Mr. Reed repeatedly indicated that his expert report relied on testimony that Mr. Schlatter will provide at trial. *See* Docket No. 139-5 at 11, 64:24-65:3; 28-29, 133:22-134:1.

to call the same or another witness to offer different testimony at trial." 8 Charles Wright, Arthur Miller & Mary Kane, Fed. Practice & Procedure § 2103 (3d ed. 2001); *see also R&B Appliance Parts, Inc. v. Amana Co., L.P.*, 258 F.3d 783, 786 (8th Cir. 2001) ("Although [the party] is certainly bound by [its Rule 30(b)(6) designee's] testimony, it is no more bound than any witness is bound by his or her prior deposition testimony. A witness is free to testify differently from the way he or she testified in a deposition, albeit at the risk of having his or her credibility impeached by introduction of the deposition"). Mr. Schlatter will, therefore, be permitted to testify at trial concerning certain purported variable expenses.[5]

The cases that Kind Group cites do not compel a contrary result. These cases

---

[5] To the extent that Kind Group argues that Mr. Schlatter's testimony will have a prejudicial effect because Kind Group was not put on notice of the factual basis for his testimony during fact discovery, the Court notes that, on October 21, 2014, OraLabs offered to make a corporate representative available to provide testimony limited to the details of the financial information that Mr. Schlatter provided to Mr. Reed. *See* Docket No. 366-3. Kind Group rejected this offer as "far too late, and with undue prejudice to Kind Group" because, at the time the offer was made, fact discovery had been closed for five months. *See* Docket No. 366-4 at 3. While fact discovery had closed, Kind Group had ample time and opportunity to cure any purported defect in notice that it now claims will cause prejudice at trial and declined to do so. Nor did Kind Group move for Rule 37 sanctions for Mr. Schlatter's failure to provide his complete testimony concerning variable costs at his Rule 30(b)(6) deposition. *See Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 451 n.3 (E. D. Pa. 2014) (noting that, while exclusion of trial testimony that contradicts statements made in a Rule 30(b)(6) deposition is inappropriate, sanctions may be available for a corporate party's failure to "designate and prepare its witness to testify about information known or reasonably available to the organization") (citation omitted). Kind Group's refusal to accept OraLabs' offer to cure its failure to disclose the basis for Mr. Schlatter's testimony or seek a different remedy by moving for discovery sanctions suggests a preference for binding Mr. Schlatter to his incomplete or inaccurate deposition testimony. Any prejudice to Kind Group from Mr. Schlatter's testimony would have been avoided but for Kind Group's decision to seek to exclude the testimony rather than attempting to cure OraLabs' purported failure to timely disclose the relevant information through supplemental discovery or by moving for sanctions.

stand only for the proposition that a litigant cannot, at the summary judgment stage, introduce an affidavit that contradicts prior deposition testimony to "create a sham issue of fact." *Mitchael*, 179 F.3d at 855; *see also Sports Racing Servs.*, 131 F.3d at 894 (affirming decision to exclude an affidavit at summary judgment that the district court believed was an attempt to create a sham fact issue).  Kind Group does not identify any case that preemptively prohibits a witness from offering testimony at trial that contradicts his previous deposition testimony.  Kind Group's fifth motion in limine will be denied.

### F.  Product-to-Product Comparison

OraLabs' second motion in limine seeks to prohibit Kind Group from directly comparing the Smooth Sphere and the Lip Revo in connection with Kind Group's design patent infringement claim.  Docket No. 320.

A commercial embodiment of a patented design may be used "[w]hen no significant distinction in design has been shown between the patent drawing and its physical embodiment[.]"  *Lee v. Dayton-Hudson Corp.,* 838 F.2d 1186, 1189 (Fed. Cir. 1988).  OraLabs argues that the Smooth Sphere is not a commercial embodiment of the '939 Patent because the patent requires that the indentation in the side wall of the hemispherical base "be a vertical cut out of the bottom portion, rather than a three dimensional curved portion as shown in the eos SMOOTH SPHERE lip balm."  Docket No. 320 at 2.  OraLabs points to two other design patents owned by Kind Group which use curved lines on side views and bottom views to define the dimensions of the indentation.  *Id.* at 2-3.  Kind Group responds that the Smooth Sphere practices the '939 Patent, and that OraLabs' claimed "significant difference" relies on an unclaimed feature

– namely, the dimensions of the indentation.

The Court, having reviewed the figures of the '939 Patent, *see* Docket No. 182-1 at 4-6, agrees with Kind Group that OraLabs has failed to show a significant difference between the Smooth Sphere and the '939 Patent that justifies prohibition of a product-to-product comparison. The only portion of the indentation that is claimed in the '939 Patent is the flat edge along the top of the side wall in the base portion of the lip balm container. *See id.* (Figures 1-3).

OraLabs argues that a product-to-product comparison is inappropriate because the Smooth Sphere incorporates elements including color, texture, scent and branding, that are not part of the claimed design. Docket No. 320 at 3-4. The Court is mindful that the finder of fact must be carefully instructed not to consider limitations that appear in the commercial embodiment to alter the scope of the claimed design. *See Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993); *see also Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1197 (Fed. Cir. 1995), abrogated on other grounds by *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). To the extent that Kind Group, as part of its design patent infringement case, references features of the Smooth Sphere that are not claimed in the '939 Patent, OraLabs may object. The Court, however, is satisfied that any potential risk of jury confusion can be resolved with a proper instruction on the scope of Kind Group's design patent claim. This is especially true given that, on Kind Group's trade dress infringement claim, the jury will already be exposed to the Smooth Sphere and the Lip Revo. Thus, instructions will need to be used to focus the jury on those elements relevant to each separate claim.

## II. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants The Kind Group LLC and eos Products LLC's Motions in Limine are **GRANTED** in part and **DENIED** in part as follows:

- Defendants' Motion in Limine No. 1 to Exclude Evidence or Testimony Regarding a Subsequently Issued Design Patent [Docket No. 327] is **GRANTED**.

- Defendants' Motion in Limine No. 2 to Admit Certain Evidence of Actual Confusion [Docket No. 329] (Public entry at Docket No. 328) is **GRANTED**.

- Defendants' Motion in Limine No. 3 to Preclude Evidence and Testimony Regarding the Prosecution History of U.S. Patent No. D644,939 [Docket No. 333] is **GRANTED** in part and **DENIED** in part as reflected in this order.

- Defendants' Motion in Limine No. 4 to Exclude Portions of the Testimony by Lay Witness Bion Bartning [Docket No. 335] (Public Entry at Docket No. 334) is **DENIED** as moot.

- Defendants' Motion in Limine No. 5 to Preclude OraLabs from Presenting Ad Hoc Contradictory Testimony Regarding Revised Alleged Costs [Docket No. 339] (Public Entry at Docket No. 338) is **DENIED**.

- Defendants' Motion in Limine No. 6 to Preclude Evidence and Testimony Regarding Legal Theories that have been Waived or Mooted [Docket No.

341] is **DENIED** as moot.

It is further

**ORDERED** that plaintiff OraLabs, Inc.'s Motion in Limine Pursuant to Fed. R. Evid. 803 and 403 [Docket No. 319] is **GRANTED** in part and **DENIED** in part as reflected in this order.  It is further

**ORDERED** that plaintiff OraLabs, Inc.'s Motion in Limine to Exclude Evidence or Testimony Using a Product-to-Product Comparison [Docket No. 320] is **DENIED**.

DATED August 12, 2015.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge